PUBLISH

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

-------------------------------------------

No. 95-3640

-------------------------------------------

D. C. Docket No. 92-03094/LAC

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
07/06/99
THOMAS  K. KAHN
CLERK

UNITED STATES OF AMERICA,

                                    Plaintiff-Appellee,

    versus

JOHN DALE RAMSDALE, CHARLES CHRISTOFERSON,

                                    Defendants-Appellants.

----------------------------------------------------------------

Appeal from the United States District Court
for the Northern District of Florida

----------------------------------------------------------------

**(July 6, 1999)**

Before EDMONDSON and CARNES, Circuit Judge, and WATSON*, Senior Judge.

_____

*Honorable James L. Watson, Senior Judge, U. S. Court of International Trade, sitting by designation.

PER CURIAM:

For the second time, two defendants appeal their sentencing. We see no reversible errors and affirm.

Background

John Ramsdale and Charles Christoferson were convicted of conspiracy to manufacture methamphetamine. They appealed their sentences and convictions. We affirmed their convictions; but remanded the case for a determination of the kind of methamphetamine involved in the conspiracy. See United States v. Ramsdale, 61 F.3d 825, 827 (11th Cir. 1995). We also asked for specific findings on the amount of methamphetamine used to sentence Christoferson. See id. at 832 n.18.

On the morning of the first day's resentencing hearing, Leo Thomas, Christoferson's lawyer, explained he was required to be at a trial in about 30 minutes. After a discussion among the district court and the lawyers for Christoferson and Ramsdale -- the significance of which underlies this appeal -- it was decided that Thomas would leave that day's resentencing hearing to attend the trial.

A DEA chemist, a DEA agent, and the defense's expert chemist testified at the resentencing hearing. Their testimony was on the type of methamphetamine produced by the conspiracy using Phenylacetic Acid (PA) and on the amount of methamphetamine that could have been produced by Christoferson and Ramsdale from the PA.

Thomas left the hearing about halfway through the cross-examination of the DEA chemist by Ramsdale's attorney. He was absent during the testimony of the DEA Agent and of the defense's expert witness. Ramsdale's attorney cross-examined the government witnesses.

Thomas made arguments to the court on the second day of the resentencing hearing. At the end of the resentencing hearing, Christoferson -- who personally was given no chance to address the district court -- and Ramsdale received sentences of 360 months each: sentences no greater than they had received initially.

Discussion

Christoferson argues that he was denied his right to address the district court at sentencing and his Sixth Amendment right to counsel. Ramsdale and

Christoferson both challenge the kind of methamphetamine used for their resentencing and the amount of methamphetamine.

Christoferson says he was denied his Sixth Amendment right to counsel because of his lawyer's absence at part of the resentencing hearing. Several events, however, prove to us that Christoferson, in fact, had a lawyer representing him at all times.

Before the hearing began, when the parties and the court first discussed Thomas's conflict, Ramsdale's lawyer said:

> I don't know if it would help at all, I believe that the testimony that's going to be solicited will affect both the cases and perhaps that may be of some help to know that that would be the case, regardless of whether Mr. Thomas stays or not. I don't know if that's going to help his client, unless they waive a conflict of interest concern.

Later, Thomas said:

> I'm proposing that the hearing take place in my absence, after which I can review the transcript and talk to my client and make a determination if there's anything else that needs to be done, if we need to bring any other witnesses. Maybe not. Probably not, but I don't know. The expert testimony is going to apply to both of us. I would think that would suffice.

Thomas added that his client was "agreeable" to the proposal.[1]  If those statements were the only evidence of what the pertinent people understood about the arrangements for Thomas's absence, we might be unsure if Christoferson was represented.  A later hearing, held at our direction,[2] however, clarified Christoferson's representation.

At the later hearing, the district court said to Thomas:

I think I can state with accuracy from my memory that at that particular [resentencing] hearing when you were not here, that Mr. Christoferson himself agreed and waived your appearance and relied upon [Ramsdale's attorney].

More important, Christoferson admitted under oath to having Ramsdale's attorney represent him at the resentencing hearing:

The Court: And you don't recall agreeing to have [Ramsdale's attorney] represent you at that hearing?

Christoferson: Yes, sir, I remember that.

The Court: Well, then you obviously had an attorney representing you, did you not?

---

[1]Thomas specifically said: "Your honor, I talked to my client and that's agreeable to him to do it that way."  Christoferson was present at the resentencing hearing.

[2]We ordered the district court to hold an evidentiary hearing on Christoferson's eligibility for appointed counsel after the resentencing: Thomas sought to withdraw.  The Sixth Amendment issue was raised because Thomas informed the district court that Christoferson was planning an ineffective assistance of counsel claim based on Thomas's absence at resentencing.

Christoferson: Yes.

The Court: By your own agreement?

Christoferson: Right.

Thomas also added, under oath, that he did not see a difference between Christoferson's and Ramsdale's interests at the sentencing hearing.

Based on all this testimony, we think Ramsdale's attorney, the district court, Thomas, and Christoferson all believed that Ramsdale's attorney was acting as substitute counsel for Thomas.

For joint representation to deprive Christoferson of his Sixth Amendment right to effective assistance of counsel, an actual -- not merely speculative -- conflict of interest must exist. See United States v. Risi, 603 F.2d 1193, 1195 (5th Cir. 1979). Christoferson does not suggest a conflict of interest existed between Ramsdale and him.

Our review of the record confirms that Ramsdale and Christoferson had no conflict of interest at the resentencing. The purpose of the hearing was to determine what kind of methamphetamine and how much methamphetamine to attribute to Christoferson and Ramsdale for sentencing. Christoferson's and Ramsdale's interests did not conflict: as coconspirators, they each were responsible

6

for the kind and amount of drugs produced by the other.  See <u>United States v. Ismond</u>, 993 F.2d 1498, 1499 (11th Cir. 1993).

Because Christoferson had Ramsdale's attorney as substitute counsel and because no conflict of interest existed between Ramsdale and Christoferson, we think Christoferson had real representation at the resentencing hearing.  So, we reject Christoferson's Sixth Amendment claim.

We also reject Christoferson's allocution claim.  Under Federal Rule of Criminal Procedure 32(c)(3)(C), a defendant must be given the chance to address the sentencing court, before a sentence is imposed.  When that opportunity is not given, but the defendant fails to object, we will remand only if we see "manifest injustice" as a result of the omission.  See <u>United States v. Rodriguez-Velasquez</u>, 132 F.3d 698, 700 (11th Cir. 1998).

We see no manifest injustice as a result of the district court's failure to afford Christoferson a chance to allocute at his resentencing.  See <u>United States v. Tamayo</u>, 80 F.3d 1514, 1522 (11th Cir. 1996) (seeing no manifest injustice in district court's failure to allow defendant to speak at resentencing hearing).

Christoferson does not suggest a manifest injustice.[3]  So, another remand is not required.

Christoferson's allocution arguments based on United States v. Taylor, 11 F.3d 149 (11th Cir. 1994) are not compelling.  In Taylor, we remanded a case because the district court failed to allow the defendant to address the court at resentencing.  Taylor is distinguishable because Taylor claimed that, at his original sentencing, he had no opportunity to allocute and because the district court, in Taylor, "set aside [the original sentencing package] in its entirety."  Id. at 152.  This case is more like Tamayo, in which we said not allowing the defendant to address the court was no reversible error: we relied mainly on the limited nature of the remand instructions.  See Tamayo, 80 F.3d at 1518-20.  As in Tamayo, our remand instructions were limited here.  Furthermore, the district court and the parties understood the remand was a limited one: not every issue applicable to sentencing would be revisited.  Christoferson, therefore, is not entitled to a remand based on his inability to address the district court at resentencing.

---

**3**He does argue, however, that his failure to object was the result of the district court's failure properly to elicit objections.  We disagree.  The district court asked if there was "anything else . . . necessary in this resentencing" after announcing the sentence.  Thomas then stated an objection on Christoferson's behalf to the sentence.  Thomas, therefore, understood the district court to be eliciting objections.  Thomas's articulation of an objection distinguishes this case from United States v. Snyder, 941 F.2d 1427, 1428 (11th Cir. 1991) (in a case where no objections were made, inquiring if parties had "anything further" is not sufficient effort at drawing objections).

We do not need to spend much time writing about Ramsdale's and Christoferson's remaining claims. We think the original trial testimony (on the value of the methamphetamine sold in this case) combined with the testimony of the DEA Agent at the resentencing (that the value of the drugs in this case and the continuing nature of Ramsdale and Christoferson's drug business meant the drug was D-methamphetamine) is sufficient to support the district court's finding on the kind of methamphetamine.[4] Cf. Reece v. United States, 119 F.3d 1462, 1470 (11th Cir. 1997) (no ineffective assistance for lawyer's failure to object to use of D-methamphetamine sentencing guidelines because drugs sold by petitioner had street value and, therefore, was D-methamphetamine).

We also think the district court committed no reversible error by attributing 42 kilograms of D-methamphetamine to Ramsdale and Christoferson. Ramsdale and Christoferson argue that attributing 42 kilograms of PA to them was a mistake and that finding 42 kilograms of PA converted to an equal amount of methamphetamine -- a conversion ratio of 100% or 1:1 -- was also mistaken.

---

[4]Despite Ramsdale's and Christoferson's suggestions to the contrary, the district court partly relied upon this testimony to reach its conclusion. After discussing the chemical process used to create D-methamphetamine, the district court said:

> And I further find that the evidence suggests that that was done in this case, based upon the testimony as to the price that they were selling the mixture for, over a continuing period of time.

We cannot say that attributing 42 kilograms of PA to Ramsdale and Christoferson was a reversible error. The district court said there was "direct evidence and testimony about immediate plans" to have 21 kilograms of PA shipped "in the very near future" (in addition to the 21 kilograms ordered earlier). We see no evidence in the record to support the district court's finding that Ramsdale and Christoferson were expecting to make another 21 kilogram purchase soon.

The statement of Matt Reed, an accomplice, is that they would "probably make a 15 kilo buy [of PA] every three weeks." We accept that the record shows that a 15 kilogram shipment "in the very near future" is concrete enough to attribute to Ramsdale and Christoferson. See United States v. Taffe, 36 F.3d 1047, 1050 (11th Cir. 1994) (conspirator defendants can be sentenced based on drugs that defendants planned to steal in the future). And if we attribute 36 kilograms (21 kilograms plus 15 kilograms) of PA to Ramsdale and Christoferson, their sentences are unchanged.[5] So, the 6-kilogram error of the district court does not require us to reverse or remand this case.

---

[5]Under the pertinent edition of the sentencing guidelines, Ramsdale's and Christoferson's base offense levels would be unchanged from those in the PSI: they were sentenced using a base offense level of 38. A base offense level of 38 applies if the defendant is involved with at least 30 kilograms of methamphetamine. See U.S.S.G. § 2D1.1(c) (1992).

We also accept, as not clearly erroneous, the district court's decision on the credibility of the expert chemists. The district court accepted the testimony of the chemist who testified at trial to a 100% conversion ratio between PA and methamphetamine. Although the two chemists testifying at the resentencing hearing provided different conversion ratios than the trial expert had provided, we will allow the district court's finding that their testimony "was unable to specifically say and to counter the opinion of [the trial] expert, because their range went from zero to 110%." See generally Amadeo v. Zant, 486 U.S. 214, 226-27 (1988) (accepting district court credibility determinations).

In summary, we see no reversible error on Christoferson's claims about right to counsel or allocution; and we see no reversible error on the kind or amount of methamphetamine attributed to Christoferson and Ramsdale.

AFFIRMED.