[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
April 19, 2005
THOMAS K. KAHN
CLERK

No. 04-12307
Non-Argument Calendar

_____

D.C. Docket No. 01-00981-CR-KMM

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ORESTES DESOTO,

Defendant-Appellant.

_____

Appeal from the United States District Court for the
Southern District of Florida

_____

**(April 19, 2005)**

Before BIRCH, BARKETT and HULL, Circuit Judges.

PER CURIAM:

Orestes DeSoto, a 20-year police veteran, appeals for the second time his

235-month and 84-month consecutive sentences imposed after his guilty plea to

several drug and firearms offenses. In his first appeal, we vacated DeSoto's sentences and remanded for resentencing. United States v. DeSoto, Case No. 02-15238, at *3 (11th Cir. Dec. 12, 2003) (hereinafter "DeSoto I"). DeSoto now appeals his new sentences.

In this appeal, DeSoto challenges the district court's fact findings as to drug quantity. He also challenges, for the first time, his sentences based on Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348 (2000), and Blakely v. Washington, 542 U.S. __, 124 S.Ct. 2531 (2004). Because the Supreme Court recently extended Blakely to the United States Sentencing Guidelines in United States v. Booker, 543 U.S. __, 125 S. Ct. 738 (2005), we consider DeSoto's appeal under Booker as well. After review, we affirm.

## I. BACKGROUND

### A. DeSoto's Plea Colloquy

DeSoto's drug and firearms convictions stemmed from three robberies that DeSoto planned and committed with Cecilio Nunez, Juan Castillo, and Alberto Garcia.[1] During the plea colloquy, the government set forth the following facts

---

[1]Without a written plea agreement, DeSoto pled guilty to these eight crimes: (1) one count of conspiracy "to possess with intent to distribute a Schedule II controlled substance, that is five (5) kilograms or more of a mixture or substance containing a detectable amount of cocaine," in violation of 21 U.S.C. §§ 846, 841(b)(1)(A)(ii); (2) one count of conspiracy to obstruct, delay, and affect commerce by robbery using means of actual and threatened force, violence and fear of injury, in violation of 18 U.S.C. § 1951 (Hobbs Act); (3) one count of conspiracy to use, carry, brandish, and

2

about the robberies. The first robbery occurred on January 13, 2000, and involved a 7-11 store manager. DeSoto went inside the 7-11 store to verify that the manager was present. After DeSoto confirmed the manager's presence, Castillo and Garcia waited for the manager to leave, followed him, sprayed him with pepper spray or mace provided by DeSoto, and stole $10,000.

The second robbery occurred on February 5, 2000, and involved a restaurant owner that DeSoto and his co-conspirators believed was a drug dealer. Nunez, posing as a police officer, conducted a traffic stop of the restaurant owner. Garcia and Castillo, also acting as police officers, drove up and Garcia flashed a police badge provided by DeSoto. Garcia and Castillo then took the restaurant owner to a warehouse where DeSoto pointed a gun at his head, beat him, and threatened to harm him further if he did not disclose where the drugs could be found. As it turned out, the victim had no drugs, so DeSoto and his co-conspirators stole the victim's money and jewelry.

---

possess a firearm during and in relation to a crime of violence or drug trafficking crime, in violation of 18 U.S.C. § 924(o); (4) three counts of unlawfully obstructing, delaying, and affecting commerce by robbery using means of actual and threatened force, violence, and fear of injury on or about January 13, 2000, February 5, 2000, and February 15, 2000, respectively, in violation of 18 U.S.C. § 1951(a); (5) attempting to possess with intent to distribute five kilograms or more of cocaine on or about February 5, 2000, in violation of 21 U.S.C. §§ 846, 841(b)(1)(A)(ii); and (6) using, carrying, and brandishing a firearm during and in relation to a crime of violence or a drug trafficking crime on or about February 5, 2000, in violation of 18 U.S.C. §§ 924(c)(1)(A)(i), (A)(ii) and 2.

According to the government, DeSoto had told his co-conspirators (Garcia and Castillo) that the restaurant owner would have 5 kilograms of cocaine. However, the government acknowledged that DeSoto disputed that drug quantity in that DeSoto "has repeatedly been interviewed and eventually he admitted his involvement in this crime, [but] he has stated it was only ounces that they were after, not five kilos."

The third robbery occurred on February 15, 2000, and involved a female bakery owner. DeSoto recruited Castillo and Garcia to rob the victim, whom DeSoto told his co-conspirators would make a good target. The three watched the bakery owner, followed her home, and robbed her of her bakery proceeds. To ensure the robbery's success, one of the conspirators waited in a police car down the street from the victim's home so that he could pretend to be chasing the robbers.

During the plea colloquy, the government also proffered facts about a failed attempted robbery that took place on February 19, 2000. DeSoto and his cohorts planned to rob persons whom they believed had won the lottery. This robbery plan was foiled, however, when real police officers found Garcia and Castillo in the vicinity with burglary tools, a walkie talkie, and gloves. Although the police stopped DeSoto as he was driving by, they released him because he identified

himself as a police officer. The police later discovered a matching walkie-talkie in the path DeSoto took to leave the scene.

At the end of the government's recitation of the facts, the district court asked DeSoto if the government's evidence was correct, to which DeSoto replied "Yes, sir." The district court then asked if there was "[a]nything you want to add or anything I left out?" DeSoto replied, "No, sir." DeSoto then pled guilty to all eight counts in the indictment, including count 1, which charged conspiracy "to possess with intent to distribute a Schedule II controlled substance, that is five (5) kilograms or more of a mixture and substance containing a detectable amount of cocaine . . . ."

After DeSoto pled guilty, the government asked for "an additional question to avoid sentencing issues." Specifically, the government asked the district court to confirm that the conspiracy was for 5 or more kilograms of cocaine. DeSoto's counsel responded that "[t]he Court already asked him specifically those questions. . . . [and] [y]ou have done a sufficient job to make sure he is pleading guilt[y] to the charges." The district court then acknowledged that there may be some factual disputes that DeSoto would "take up at sentencing," including the drug quantity issue. The district court adjudged DeSoto guilty of all counts in the indictment.

**B.     Presentence Investigation Report ("PSI") and Sentencing**

The PSI recommended a base offense level of 32 because DeSoto's drug offense involved at least 5, but less than 15, kilograms of cocaine.[2]  The offense level of 32 was increased: (1) two levels, pursuant to U.S.S.G. § 3A1.3, because the restaurant owner was physically restrained during the robbery; (2) four levels, pursuant to U.S.S.G. § 3B1.1(a), because of DeSoto's role as a leader or organizer; and (3) two levels under U.S.S.G. § 3B1.3, because as a police officer DeSoto abused a position of trust.  After a two-level reduction for acceptance of responsibility, DeSoto's total offense level was 38.  His criminal history category of I and offense level of 38 produced a Guidelines range of 235 to 293 months' imprisonment.

DeSoto objected to the PSI and again at sentencing to the role and abuse-of-trust enhancements.  The district court overruled these objections.  DeSoto also objected to the PSI's recommended drug quantity but he did not raise the drug quantity issue at sentencing.

---

[2]The PSI recommended that DeSoto's eight offenses be grouped into three separate groups based on the January 13, February 5, and February 15 robberies.  Group 2, relating to the February 5, 2000 robbery of the restaurant owner, produced the highest adjusted offense level.  Group 2 was thus used to compute DeSoto's Guidelines range.

The district court adopted the PSI calculations and sentenced DeSoto to 235 months' imprisonment (the low end of the Guidelines range), to run consecutively to an 84-month sentence on the firearm conviction. The district court also ordered DeSoto to pay $22,169.93 in restitution.

## C.     DeSoto's First Appeal

DeSoto appealed his convictions and sentences. As to his sentences, DeSoto argued that the district court erred in ordering restitution and in determining the enhancements for his role as a leader, his abuse of trust as a police officer, and for a drug quantity of 5 or more kilograms of cocaine.

In the first appeal, this Court concluded "there is no merit to any of the challenges DeSoto makes concerning his convictions and sentences, with the exception of the issue involving drug quantity." DeSoto I, at *3. After affirming DeSoto's convictions, this Court then said, "because the district court failed to make findings regarding the five or more kilograms of cocaine for which it held DeSoto responsible at sentencing, we vacate DeSoto's sentences and remand this case for resentencing. Id.

## D.     DeSoto's Resentencing

On remand, the district court restricted all arguments and evidence at resentencing to the drug-quantity issue, finding that we had issued a limited

remand. At the resentencing hearing, the government presented a transcript of the sworn testimony of robbery-participant Garcia who testified at Nunez's trial that DeSoto told them that the February 5, 2000 robbery victim would have 5 kilograms of cocaine. Specifically, during Nunez's trial, Garcia testified regarding what the co-conspirators planned to take from the restaurant owner. Garcia stated: "It was a large amount of money, what's supposed to be five kilos, some money. I eventually gave in." Garcia was also asked: "Mr. Desoto told you it would be five kilos of cocaine?" Garcia responded "yes." Later in the trial, on cross-examination, Garcia reiterated that the goal was to get 5 kilograms of cocaine from the restaurant owner.

At the resentencing hearing, DeSoto disputed the drug quantity by pointing to his own testimony from Nunez's trial in which he (1) denied having any detailed information about the amount of drugs and (2) denied telling Garcia that the restaurant owner would have 5 kilograms.

The district court found that DeSoto was responsible for 5 kilograms of cocaine because he had pled guilty to that amount. The district court also found that Garcia's trial testimony was reliable and credible, that DeSoto's testimony was "ambivalent" and "self-serving," and thus, that the government successfully proved by a preponderance of the evidence that DeSoto was responsible for 5

8

kilograms of cocaine. The district court then reimposed the same sentences it had entered at the original sentencing. DeSoto timely appealed.

## II. DISCUSSION

In this second appeal, DeSoto argues (1) that the district court erred in limiting resentencing to the drug-quantity issue; and (2) that the district court erred in its fact-finding as to the amount of cocaine. DeSoto also raises for the first time Apprendi/Blakely arguments as to his sentencing enhancements. We discuss each issue in turn.

## A.    Limited Resentencing

Although DeSoto's original sentence was vacated, the DeSoto I panel clearly stated that none of the sentencing issues DeSoto raised in the first appeal had any merit, except the drug-quantity issue. Because, for judicial economy purposes it is better for the district court not to redo that which was done properly at the first sentencing, this Court has held that there is "nothing improper" in the district court limiting the scope of the resentencing proceeding. United States v. Tamayo, 80 F.3d 1514, 1520 (11th Cir. 1996) (internal quotation marks and

citation omitted). Consequently, the district court did not err in limiting its resentencing consideration to the drug-quantity issue.[3]

**B.      Cocaine Fact-Finding**

Given co-conspirator Garcia's testimony, we also find no reversible error in the district court's fact-finding that the drug quantity was more than 5 kilograms but less than 15 kilograms. We recognize that DeSoto emphasized that no drugs were actually stolen during the February 5, 2000 robbery. However, DeSoto was punished for conspiring to possess with intent to distribute 5 kilograms or more of cocaine, and not for actually completing the crime. The fact that no drugs were actually stolen does not preclude the enhancement. See United States v. Ramsdale, 179 F.3d 1320, 1325 (11th Cir. 1999) (concluding there was no error in attributing 15 kilograms of methamphetamine to defendants convicted of conspiring to manufacture methamphetamine when defendants had not actually manufactured that amount, but "would probably" buy 15 kilograms of the necessary ingredient "every three weeks" in order to do so).

---

[3]In limiting the resentencing to the drug quantity issue, the district court explained that: "the way I would interpret the letter and spirit of the remand is that they don't want me revisiting the issues that were previously raised before the district court in the first sentencing and have been reviewed on appeal and anything more than that would undermine their prior appellate determinations."

We also reject DeSoto's claim that the district court used the wrong legal standard. Although the district court did state that DeSoto was responsible for 5 kilograms of cocaine because this amount was reasonably foreseeable, it also stated that it was basing its drug-quantity finding on the preponderance of the evidence, namely, Garcia's testimony. In doing so, the district court stated: "I think the record clearly establishes by a preponderance of the evidence based on the credible and reliable and the specific testimony of Mr. Garcia that the deal was supposed to involve five kilos or more of cocaine."

## C. <u>Booker</u> Error

For the first time on appeal, DeSoto argues that his sentences violate <u>Apprendi/Blakely</u> because the district court applied several sentencing enhancements based on facts neither admitted by him nor found by a jury beyond a reasonable doubt. Because <u>Booker</u> extended <u>Blakely</u> to the Sentencing Guidelines, we review DeSoto's claims under <u>Booker</u>. We conclude that there is no Sixth Amendment violation as to any of DeSoto's sentencing enhancements.

In <u>Blakely</u>, the Supreme Court held that the imposition of a sentencing enhancement under the state of Washington's mandatory guidelines system based upon facts neither admitted by the defendant nor found by the jury violated the defendant's Sixth Amendment right to a jury trial. 124 S. Ct. at 2534-38. In

11

Booker, the Supreme Court extended this holding to the Sentencing Guidelines. Booker, 125 S. Ct. at 746. Determining that it was the binding nature of the Guidelines that offended the Sixth Amendment, the Supreme Court in Booker excised the provisions of the Sentencing Reform Act making the Guidelines mandatory and providing for de novo review of sentences on appeal. Id. at 756-57. Thus, the Supreme Court effectively made the Guidelines advisory.

Booker issues raised for the first time on appeal are reviewed for plain error. United States v. Rodriguez, – F.3d – , 2005 WL 272952, at *6 (11th Cir. Feb. 4, 2005).[4]

DeSoto does not meet the first prong of the plain-error test because during the plea colloquy he admitted the facts that supported the district court's following sentencing enhancements. See Booker, 125 S. Ct. at 756.

As to the § 3A1.3 enhancement for physically restraining the victim, the facts at the plea colloquy established that during the February 5, 2000 robbery, DeSoto and his co-conspirators beat the restaurant owner and threatened him while holding a gun to his head.

---

[4]To establish plain error, the defendant must show "'(1) error, (2) that is plain, and (3) that affects substantial rights." Rodriguez, 2005 WL 272952, at *6 (quoting United States v. Cotton, 535 U.S. 625, 631, 122 S. Ct. 1781, 1785 (2002)). "'If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." Id. (quoting Cotton, 535 U.S. at 631, 122 S. Ct. at 1785).

As to the § 3B1.1 enhancement, the facts at the plea colloquy established that DeSoto: (1) recruited his co-conspirators to rob various persons during four different robberies; (2) provided some of the tools necessary, such as pepper spray and a police badge; and (3) studied the victims.

As to the § 3B1.3 abuse-of-position-of-trust enhancement, the facts at the plea colloquy established that in the February 5, 2000 robbery, DeSoto and his co-conspirators posed as police officers, conducted a traffic stop of the restaurant owner, took him to a warehouse, and beat him in an effort to learn where the drugs could be found.

As to drug quantity, DeSoto pled guilty to the indictment, which set forth a specific drug quantity of 5 or more kilograms of cocaine, and thus DeSoto admitted to this drug quantity as well. Our earlier remand for a drug-quantity finding in DeSoto I was because the district court technically failed to make the requisite fact finding, not because of insufficient evidence of the 5 kilograms. Thus, given DeSoto's guilty plea admitting to a drug quantity of 5 or more kilograms of cocaine and the fact that he was sentenced only for 5 kilograms of cocaine, there is no Sixth Amendment violation in his sentence.

Alternatively, if the initial remand implicitly found DeSoto's guilty-plea admissions insufficient to establish drug quantity, a Sixth Amendment violation

13

under <u>Booker</u> exists as to the judicial fact finding of drug quantity.  In such a situation, the Sixth Amendment violation under <u>Booker</u> would be because the district court applied the drug quantity enhancement under a mandatory Guidelines system.  <u>See</u> <u>Rodriguez</u>, 2005 WL 272952, at 9; <u>see also</u> <u>United States v. Shelton</u>, 2005 WL 435120, at *5 (11th Cir. Feb. 25, 2005).  If a Sixth Amendment violation exists, DeSoto has established the first two prongs of plain-error review.  <u>Shelton</u>, 2005 WL 435120, at *5 (stating that "it is enough that the error be plain at the time of appellate consideration" (internal quotation marks and citation omitted)).

However, as to the third prong, DeSoto has not established that the <u>Booker</u> error affected his substantial rights.  The third prong of the plain-error test "almost always requires that the error must have affected the outcome of the district court proceedings."  <u>Rodriguez</u>, 2005 WL 272952, at *7 (quotation marks and citations omitted).  "The standard for showing that is the familiar reasonable probability of a different result formulation, which means a probability sufficient to undermine confidence in the outcome."  <u>Id.</u> (quotation marks and citations omitted).

In this particular case, the sentencing record provides no basis for a conclusion that DeSoto has shown a reasonable probability of a more lenient sentence under an advisory Guidelines regime.  Given the seriousness of these violent crimes, his convictions for eight different crimes, including three separate

14

robberies, the physical restraint of the victims, and DeSoto's abuse of his position of trust as a police officer, we conclude that DeSoto has not satisfied the third prong.

**D.    Restitution Order**

DeSoto argues that the restitution order is unconstitutional under Blakely (now Booker) because it is based on a judicial finding of loss neither admitted by him nor found by a jury. Because DeSoto failed to object on this basis in the district court, we review this claim also for plain error. See Rodriguez, 2005 WL 272952, at *6.

Because neither the Supreme Court nor this Court has addressed whether Booker applies to restitution, any error cannot be plain. See United States v. Gerrow, 232 F.3d 831, 835 (11th Cir. 2000) (holding that "where neither the Supreme Court nor this Court has ever resolved an issue, and other circuits are split on it, there can be no plain error in regard to that issue." (internal quotation marks and citation omitted)). Moreover, at least one circuit has held that Blakely does not apply to restitution. United States v. Swanson, 394 F.3d 520, 526 (7th Cir. 2005) ("The decisions in Blakely, Booker, and Fanfan, . . . do not affect the manner in which findings of restitution or forfeiture amounts must be made."). Accordingly, no plain error has been shown as to the restitution.

Upon careful review of the record and the parties' briefs, we find no reversible error and affirm DeSoto's sentences.

**AFFIRMED**.