[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-11621
Non-Argument Calendar
_____

D.C. Docket No. 1:11-cr-20613-JLK-2


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

VLADIMIR LOUISSANT,

Defendant-Appellant.


_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(March 7, 2014)

Before TJOFLAT, WILSON and JORDAN, Circuit Judges.

PER CURIAM:

Vladimir Louissant appeals his life sentence, imposed at the top of the guideline range, after pleading guilty to possession of a firearm in furtherance of a crime of violence resulting in death, in violation of 18 U.S.C. § 924(c)(1)(A) and (j)(1).  On appeal, he argues that the district court failed to elicit objections after imposing his sentence as required by *United States v. Jones*, 899 F.2d 1097, 1102 (11th Cir. 1990), *overruled on other grounds by United States v. Morrill*, 894 F.2d 1136 (11th Cir. 1993) (en banc) (per curiam).  He claims that the *Jones* violation alone is sufficient to require us to vacate and remand, but if we disagree, he asserts that we must vacate and remand in any event because his sentence was procedurally unreasonable for a variety of reasons.  This is particularly true given that, due to the *Jones* violation, we review all objections to the procedural reasonableness of his sentence—even those raised for the first time on appeal—as if they were preserved below.

We agree with Louissant that a *Jones* violation occurred and that this relaxes our standard of review.  Further, at least one of Louissant's unreasonableness claims is either meritorious or cannot be resolved because the record is insufficiently developed.  Accordingly, we vacate and remand for resentencing.

I.

In *Jones*, we "instruct[ed] the district courts to elicit fully articulated objections, following imposition of sentence, to the court's ultimate findings of

2

fact and conclusions of law." 899 F.2d at 1102. The rule serves several distinct purposes. First, it ensures that objections to a district court's sentence can be raised—and if sustained, remedied—on the spot. *Id.* Second, the rule ensures that objections are fully articulated and the record is fully developed to facilitate appellate review. *Id.*

Here, a *Jones* violation occurred. Prior to the imposition of Louissant's sentence, defense counsel had been fully heard on all objections. Then the district court imposed a life sentence, after which it announced a brief recess without eliciting new objections. After the recess was announced, defense counsel asked to preserve his objection, and the court responded, "Yes," while leaving the bench. Thus, the district court did not "elicit fully articulated objections, following imposition of sentence." *Id.* Indeed, the court did not elicit objections at all. To be sure, the district court elicited objections before the sentence was imposed, but as we recognized in *Jones* itself, that is not enough because "new causes for objection, which the parties could not reasonably have anticipated, may arise during the hearing *or during the imposition of sentence*." *Id.* (emphasis added).

The government argues that although the court "omitted the question required by *Jones*, defense counsel answered the question as though it had been asked." Under these circumstances, the government claims that there is no reason to remand the case because the defense actually raised all the objections it would

have raised had *Jones* been followed.  In support of this argument—that we can overlook a technical *Jones* violation so long as defense responds as if the *Jones* inquiry had been made—the government cites *United States v. Ramsdale*, 179 F.3d 1320, 1324 n.3 (11th Cir. 1999) (per curiam).  In that case, the court found there was not a *Jones* violation where, in response to the question, is "anything else . . . necessary in this resentencing[?]" the defense raised an objection.  179 F.3d 1320, 1324 n.3 (11th Cir. 1999) (per curiam).  The government notes that in *United States v. Snyder*, we found a *Jones* violation where the court made a virtually identical inquiry but the defense gave no response.  941 F.2d 1427, 1428 (11th Cir. 1991) (per curiam) (noting that the court only asked whether there was "anything further[?]"); *see also United States v. Campbell*, 473 F.3d 1345, 1348 (11th Cir. 2007) (per curiam).  The government concludes that if we are willing to excuse an inadequate *Jones* inquiry based on the defense's response, we should be willing to excuse the absence of an inquiry for the same reason.

Without suggesting that we would never adopt the extension of *Ramsdale* the government requests, we could not do so here because the facts before us are different.  In *Ramsdale*, the defense acted as though the *Jones* question had been asked by raising an objection.  179 F.3d at 1324 n.3.  Here, the government claims the defense did the same by asking, "Your Honor, may I preserve [Louissant's] objection for the record?"  This is not correct.  Defense's request here was limited

4

to ensuring that objections already raised were preserved, while *Jones* is designed to afford the defense an opportunity to raise *new* objections that may have arisen since defense last had an opportunity to object. *See Jones*, 899 F.2d at 1102 (noting that "this appeal could have been avoided if the court, *after pronouncing sentence*, had asked counsel whether there were any objections . . . *other than those previously stated*" (emphasis added)). Thus, unlike *Ramsdale* where the defense's response implied full understanding of its rights under *Jones*, the defense's response here does not imply anything about its understanding of the right to raise *new* objections.

Moreover, if we were to adopt the government's proposed rule, we would expect that if a court does not affirmatively seek new objections, it would at least welcome them with open arms if a defendant offers them. Here, however, the rushed sequence of events after the sentence was imposed gave defense little opportunity to object, and when defense spoke after the recess was announced, it was met with a one word response. Thus, not only did the defense not act as if it knew its rights under *Jones*, but the court, too, acted as if the defense had no further right to raise new objections.

To its credit, the court recognized its failure to comply with *Jones* and took corrective measures. The cure, however, only partially remedied the error. After imposing the final sentence in the conspiracy, and well after Louissant and his

5

counsel had left the courtroom, the court stated, "You're advised you have a right to appeal from this. . . . Now, I neglected [to] do that on the other two defendants [including Louissant]. . . . Under *U.S. versus Jones*, is there any objection to sentence or to the manner in which it was pronounced, except what's already been stated . . . ?" This perfectly captures all that is required by *Jones*—namely, elicitation of objections, *other than those already stated*, to the sentence *or its pronouncement*. *Jones*, 899 F.2d at 1102. Louissant was denied both aspects of the *Jones* rule just emphasized: he was not asked to raise new objections, nor was he given an opportunity to object to the sentence's pronouncement.

Yet, the court only noted that it neglected to advise Louissant of his right to appeal. Seeing this as its only error, the court noted that calling skilled and competent defense counsel back to court simply to inform him of the right to appeal—a right which he was well aware of—would be demeaning. Consequently, with the advice of the prosecutor and defense counsel for Louissant's co-conspirator, the court issued an order advising Louissant and his counsel of their right to appeal and offering them an opportunity to return to court to be advised of that right in person. This cure, which was limited to informing Louissant of his right to appeal, did nothing to address the far more serious *Jones* violation that had occurred whereby Louissant was denied the right to raise new objections to the

6

pronouncement of his sentence.  Thus, a *Jones* violation occurred without being cured.

## II.

Ordinarily, where a *Jones* violation occurs, we vacate and remand for resentencing.  *Jones*, 899 F.2d at 1103.  We do not vacate and remand as a matter of course, however.  *See United States v. Johnson*, 451 F.3d 1239, 1242 (11th Cir. 2006) (per curiam) (recognizing a *Jones* error but declining to remand because the defendant did not raise the *Jones* error and "because the record is sufficient for meaningful appellate review").  Where a *Jones* violation occurs but we do not vacate and remand, the ordinarily deferential standard of review on sentencing appeals—and the even more deferential standard applied to claims raised for the first time on appeal—becomes de novo because such a violation implies that the defendant's opportunity to raise objections below was somehow limited.  *Id.*

With this in mind, we turn to the objections Louissant raises for the first time on appeal, reviewing them de novo.  Louissant raises two new procedural reasonableness challenges[1]: (1) the district court relied on testimony from the trial of Louissant's co-conspirator in violation of *United States v. Castellanos*, 904 F.2d 1490, 1496 (11th Cir. 1990), and (2) the district court's ex parte discussion with

---

[1] Louissant also raises two procedural reasonableness challenges that were fully addressed by the district court.  Because we reverse and remand for other reasons, we do not address those claims.

the government regarding how to remedy the *Jones* violation deprived Louissant of his Sixth Amendment right to counsel.

Assuming *arguendo* that we are not required to vacate and remand based solely on Louissant's successful *Jones* violation claim and that the record is sufficiently developed for meaningful appellate review,[2] we turn to Louissant's first claim. In *Castellanos*, we held that "evidence presented at the trial of another may not—*without more*—be used to fashion a defendant's sentence if the defendant objects. In such a case, where the defendant has not had the opportunity to rebut the evidence or generally to cast doubt upon its reliability, he must be afforded that opportunity." 904 F.2d at 1496; *see also United States v. Washington*, 714 F.3d 1358, 1361–62 (11th Cir. 2013) (holding that a district court erred by enhancing a sentence based on evidence from his co-conspirator's hearing when the defendant had no opportunity to rebut the evidence).

Here, during the imposition of the sentence, the district court stated, "Having considered[, among other things,] *the evidence at the trial*, . . . it is the judgment of

---

[2] The decision to review the merits of a new claim on appeal rather than vacating and remanding appears to be discretionary. *See United States v. Shields*, 87 F.3d 1194, 1196 (11th Cir. 1996) (en banc). A necessary condition to having this discretion is a finding that the record is "sufficient for meaningful appellate review;" if it is not, we must simply vacate and remand. *Johnson*, 451 F.3d at 1242. *Johnson* does not make clear whether this is a sufficient condition, however, because *Johnson* also relied on the fact that the defendant did not raise the *Jones* violation. *Id.* Here, we need not resolve that open question because regardless of whether we have discretion to reach the merits or not, the result is the same: to the extent the record is sufficient for meaningful review, we find the sentence unreasonable on the merits, requiring us to vacate and remand just as we would if we had no discretion to reach the merits.

8

the Court that you should be [imprisoned for life]." (Emphasis added.) Given that Louissant pled guilty, there was only one trial to which this statement could have referred: the trial of Louissant's co-conspirator. The same judge who sentenced Louissant presided over that trial and heard highly prejudicial testimony against Louissant through which the co-conspirator attempted to shift blame off himself and on to Louissant. Louissant had no opportunity to rebut that evidence. Thus, he was sentenced based on "evidence presented at the trial of another . . . where the defendant [did] not ha[ve] the opportunity to rebut the evidence," in clear violation of *Castellanos*. 904 F.2d at 1496.

The government insists that "the evidence from the trial" was contained either in the factual proffer submitted with Louissant's guilty plea or in his Presentence Investigation Report (PSI). Louissant had an opportunity to object to and rebut this evidence during his sentencing hearing, so, the government argues, the district court did not violate *Castellanos*. The government's argument is unpersuasive. Some testimony presented at the trial, including evidence that Louissant threatened to kill his co-conspirators if they said anything to the authorities, was never discussed at Louissant's sentencing nor was it contained in either the proffer or the PSI. To the extent the court relied on this highly suggestive evidence without providing an opportunity for rebuttal, the district court violated *Castellanos*, requiring us to vacate and remand.

9

We note that even if the government were to argue that when the district court referred to "the evidence in the trial," it was referring only to the limited universe of evidence in the trial that was also in the proffer or the PSI, or if the government were to claim that the district court would have reached the same outcome regardless of the testimony from the trial, their argument would be no more persuasive.  There is no indication in the record precisely what the court meant when it referred to "the evidence in the trial" or how important a role this evidence played in its final determination.  Thus, at best, these arguments would prove that the record is insufficiently developed for meaningful appellate review.  In that case, we would be compelled to vacate and remand, as well.  *See Johnson*, 451 F.3d at 1242.

## III.

This case reminds us why the rule announced in *Jones* is so important.  It is entirely possible that, had the court invited Louissant to offer new objections, he would have raised the present objection, and the court could have resolved Louissant's concerns on the spot.  Moreover, explicitly eliciting objections from counsel after the sentence is imposed is critical because "new causes for objection, which the parties could not reasonably have anticipated, may arise during the hearing *or during the imposition of sentence*."  *Jones*, 899 F.2d at 1102 (emphasis added).  That is exactly what happened here, as Louissant had no opportunity to

object to the court's consideration of evidence from his co-conspirator's trial because, prior to the imposition of the sentence, the district court gave no indication that it would rely on "the evidence from the trial." Because Louissant had no opportunity to object below, we must review with far less deference than we would ordinarily afford district courts.

For the foregoing reasons, we are required to vacate Louissant's sentence and remand for resentencing.

**VACATED AND REMANDED.**