[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-12153
Non-Argument Calendar
_____

D.C. Docket No. 1:01-cr-00981-KMM-2

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ORESTES DESOTO,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(February 7, 2017)

Before TJOFLAT, WILLIAM PRYOR, and ROSENBAUM, Circuit Judges.

PER CURIAM:

Orestes Desoto appeals the district court's denial of his motion to reduce his sentence, pursuant to 18 U.S.C. § 3582(c)(2), based on Amendment 782 to the United States Sentencing Guidelines. He argues that the district court abused its discretion by denying his § 3582(c)(2) motion when he was eligible for a sentence reduction under Amendment 782. After careful review, we affirm.

## I.

Desoto, a former police officer with the Hialeah Police Department, is in prison for planning and committing a series of robberies in and around Miami with Cecilio Nunez, Juan Castillo, and Alberto Garcia.[1] The first robbery took place outside of a 7-Eleven Store on January 13, 2000. Desoto first confirmed that the manager was present and then alerted his coconspirators when the manager left with the store deposits. As the manager left the store, Castillo and Garcia approached the manager, sprayed him with mace, and then stole around $10,000.

The second robbery, on February 5, 2000, involved the kidnapping and robbery of a restaurant owner that Desoto and his co-conspirators believed was a drug dealer. Nunez, a Hialeah police officer driving a marked Hialeah police car, conducted a traffic stop of the victim after he left his restaurant on the night of February 5. Soon after, Castillo and Garcia drove up in another vehicle and pulled

---

[1] The facts of Desoto's offense conduct are derived from the government's factual proffer at Desoto's change-of-plea hearing, which Desoto agreed was accurate, and undisputed factual statements in the presentence investigation report.

2

in front of the victim's truck, blocking its path.  Garcia then ordered the victim out of his truck, claiming to be a detective and flashing a police badge that had been supplied by Desoto.  The victim was then handcuffed, hooded, and driven to a warehouse.

At the warehouse, Desoto, who identified himself to the victim as "Sergeant Gonzalez," punched the victim multiple times, placed a gun inside his mouth, and threatened to shoot him if he did not reveal where the money and drugs could be found.  After 15 to 20 minutes of hitting the victim to no avail, the co-conspirators stole all of his jewelry and money.  The victim was then driven to a street corner and abandoned, still hooded and cuffed.

The third robbery occurred on February 15, 2000.  The victim was a female bakery owner.  Desoto recruited Castillo and Garcia to rob the victim, whom Desoto told his co-conspirators would make a good target.  The three watched the bakery owner, followed her home, and robbed her of her bakery proceeds.  One of the conspirators waited in a police car down the street from the victim's home so that he could pretend to be chasing the robbers.

During the plea colloquy, the government also proffered facts about a failed attempted burglary that took place on February 19, 2000.  Desoto and his cohorts planned to burglarize the home of an elderly couple whom they believed had won the lottery.  This plan was foiled, however, when real police officers found Garcia

3

and Castillo in the vicinity with burglary tools, a walkie talkie, and gloves. Although the police stopped Desoto as he was driving by, they released him because he identified himself as a police officer. The police later discovered a matching walkie-talkie in the path Desoto took to leave the scene.

Desoto pled guilty in March 2002 to several robbery, drug, and firearms offenses.[2] Thereafter, the U.S. Probation Office ("Probation") prepared Desoto's presentence investigation report ("PSR"), recommending a guideline imprisonment range of 235 to 293 months, plus a consecutive term of no less than 84 months for his 18 U.S.C. § 924(c)(1) conviction.

The guideline range was based on a total offense level of 38 and a criminal history category of I.[3] Specifically, the PSR recommended a base offense level of 32 because Desoto's drug offense involved at least five, but less than fifteen,

---

[2] Without a written plea agreement, Desoto pled guilty to these eight crimes: (1) one count of conspiracy to conspiracy to possess with intent to distribute five kilograms or more of cocaine, in violation of 21 U.S.C. §§ 846, 841(b)(1)(A)(ii); (2) one count of conspiracy to obstruct, delay, and affect commerce by robbery using means of actual and threatened force, violence and fear of injury, in violation of 18 U.S.C. § 1951 ("Hobbs Act robbery"); (3) one count of conspiracy to use, carry, brandish, or possess a firearm during and in relation to a crime of violence or drug-trafficking crime, in violation of 18 U.S.C. § 924(o); (4) three counts of substantive Hobbs Act robbery, in violation of 18 U.S.C. § 1951(a); (5) one count of attempting to possess with intent to distribute five kilograms or more of cocaine, in violation of 21 U.S.C. §§ 846, 841(b)(1)(A)(ii); and (6) one count of using, carrying, and brandishing a firearm during and in relation to a crime of violence or a drug-trafficking crime, in violation of 18 U.S.C. §§ 924(c)(1)(A) and 2.

[3] The PSR recommended that Desoto's eight offenses be grouped into three separate groups based on the January 13, February 5, and February 15 robberies. Group 2, relating to the February 5 robbery of the restaurant owner, produced the highest adjusted offense level. Group 2 was thus used to compute Desoto's guideline range.

4

kilograms of cocaine.  The offense level of 32 was increased (1) two levels, pursuant to U.S.S.G. § 3A1.3, because the restaurant owner was physically restrained during the robbery; (2) four levels, pursuant to U.S.S.G. § 3B1.1(a), because of Desoto's role as a leader or organizer; and (3) two levels under U.S.S.G. § 3B1.3, because as a police officer, Desoto abused a position of trust. After a two-level reduction for acceptance of responsibility, Desoto's total offense level was 38.

Desoto objected that his base offense level should not be determined on the basis of five kilograms of cocaine, as no cocaine was actually involved in the offenses.  The issue was not raised at sentencing, however, and the district court adopted the PSR's calculations and sentenced Desoto to 235 months' imprisonment—the bottom of the then-mandatory guideline range—to run consecutively to a term of 84 months on the § 924(c)(1) firearm conviction.

On appeal, a panel of this Court determined that the district court had failed to make findings regarding the five or more kilograms of cocaine for which it held Desoto responsible at sentencing.  The panel vacated the sentences and remanded for resentencing.  At resentencing, the government presented a transcript of the sworn testimony of Garcia, who testified at Nunez's trial that Desoto told them that the February 5 robbery victim would have five kilograms of cocaine.  The district court resentenced Desoto to the same sentences after considering the evidence and

determining that the drug quantity was five or more kilograms of cocaine. We affirmed Desoto's sentences on appeal. *See United States v. DeSoto*, 129 Fed. App'x 498, 503–05 (11th Cir. 2005).

In 2014, the United States Sentencing Commission issued Amendment 782, which reduced the offense level for most drug offenses by two levels. U.S.S.G. app. C, Amend. 782. Amendment 782 became available for retroactive application in November 2015. *See* U.S.S.G. app. C., Amend. 789.

In March 2016, Desoto filed a counseled motion for a sentence reduction based on Amendment 782, pursuant to 18 U.S.C. § 3582(c)(2). He asserted that Amendment 782 reduced his total adjusted offense level to 36, resulting in an applicable guideline range of 188 to 235 months of imprisonment, rather than 235 to 293 months. Citing the 18 U.S.C. § 3553(a) factors, Desoto argued that sentence reduction was warranted for several reasons: Amendment 782 applied; releasing him earlier would help alleviate overcapacity in federal prisons; he had lived a crime-free life apart from the criminal conduct in this case; he had testified for the government against Nunez without benefit; his post-sentencing conduct record was nearly perfect and involved a number of efforts "to better himself in every way that he can"; and the risk of recidivism was very low, even if the court reduced his sentence, due to his older age upon release.

The government agreed that Desoto was eligible for a sentence reduction but opposed it on grounds that the nature of the underlying convictions was extremely serious and that Desoto posed a serious risk to public safety. The government noted that he had planned and participated in a string of violent robberies and had shown no reservations about using violence or abusing his position as a police officer. Additionally, the government asserted, Desoto's violent behavior had continued during incarceration, as demonstrated by the fact that he had assaulted another inmate in 2005 with a lock in a sock.

Desoto replied that his sentence already took into account the seriousness in the offenses, that he had fully served his separate sentence for the § 924(c)(1) firearm conviction, and that the court's original decision to sentence him to the low end of the guideline range indicated that the court did not find that he was among the most egregious offenders within his guideline range. He also reiterated that the risk of recidivism decreases with age.

United States District Judge K. Michael Moore, the same judge who conducted Desoto's sentencing, denied his § 3582(c)(2) motion. Judge Moore found that Desoto was eligible for a reduction but that a reduction was "unwarranted in light of the history and characteristics of Defendant." The judge explained that Desoto had participated in string of violent robberies while serving as a police officer and that, during the robberies, Desoto "had no reservations about

7

using violence against his victims or abusing his position of public trust as a police officer." Desoto now appeals the denial of his § 3582(c)(2) motion.

## II.

We review for an abuse of discretion a district court's decision whether to reduce a sentence under 18 U.S.C. § 3582(c)(2). *United States v. Jules*, 595 F.3d 1239, 1241-42 (11th Cir. 2010). A district court abuses its discretion by failing to apply the proper legal standard or follow proper procedures when making a determination under § 3582(c)(2). *Id.*

Under § 3582(c)(2), a district court may reduce an incarcerated defendant's term of imprisonment if the defendant's sentence is "based on a sentencing range that has subsequently been lowered by the Sentencing Commission." 18 U.S.C. § 3582(c)(2). In considering a § 3582(c)(2) motion, a district court must engage in a two-part analysis. *United States v. Bravo*, 203 F.3d 778, 780 (11th Cir. 2000); *see also Dillon v. United States*, 560 U.S. 817, 826-27, 130 S. Ct. 2683, 2691-92 (2010).

First, the court must recalculate the applicable guideline range by substituting only the amended guideline for the one originally used. *Bravo*, 203 F.3d at 780; *see* U.S.S.G. § 1B1.10(b)(1). A defendant is eligible for a reduction only if a retroactive amendment lowers the applicable guideline range. U.S.S.G. § 1B1.10(a)(2)(B); *id.* § 1B1.10 cmt. n.(A). There is no dispute that

8

Desoto was eligible for a sentence reduction based on Amendment 782, which had the effect of lowering Desoto's applicable guideline imprisonment range from 235–293 months to 188–235 months.

Second, if a defendant is eligible for a sentence reduction, as Desoto is, the district court must decide whether to reduce the defendant's original sentence. *Bravo*, 203 F.3d at 781.    While a defendant's eligibility for relief under § 3582(c)(2) is a question of law, "[the district court's] decision whether to reduce the defendant's sentence, and to what extent, remains discretionary."  *See United States v. Williams*, 557 F.3d 1254, 1257 (11th Cir. 2009).  Thus, eligibility alone does not mean that a defendant is entitled to a discretionary sentence reduction. *See* U.S.S.G. § 1B1.10 cmt. backg'd ("The authorization of . . . a discretionary reduction . . . does not entitle a defendant to a reduced term of imprisonment as a matter of right.").

In evaluating whether and to what extent a discretionary sentence reduction is warranted, the district court "must consider the sentencing factors listed in 18 U.S.C. § 3553(a), as well as public safety considerations, and may consider the defendant's post-sentencing conduct."  *Williams*, 557 F.3d at 1256; *see* 18 U.S.C. § 3582(c)(2); U.S.S.G. § 1B1.10 cmt. n.1(B).  The § 3553(a) factors include the nature and circumstances of the offense, the history and characteristics of the defendant, the applicable guideline range, and the need for the sentence imposed to

reflect the seriousness of the offense, to promote respect for the law, to afford adequate deterrence to criminal conduct, and to protect the public.  18 U.S.C. § 3553(a)(1)–(2), (4).  The district court is not required to discuss each § 3553(a) factor as long as the record as a whole demonstrates that the pertinent factors were taken into account.  *Williams*, 557 F.3d at 1256; *see also United States v. Smith*, 568 F.3d 923, 927–29 (11th Cir. 2009).

Here, the district court did not abuse its discretion by denying Desoto a sentence reduction under § 3582(c)(2).  Contrary to Desoto's arguments on appeal, the record is adequate to show that the district court took into account the relevant § 3553(a) factors, considered the parties' arguments, and sufficiently explained its reasons, based on the relevant factors, for exercising its discretion not to reduce Desoto's sentence.

The district court's order reflects that the court considered Desoto's § 3582(c)(2) motion as well as the government's response, as the reasons given by the court for denying the motion are nearly identical to language used in the government's response.  Desoto's motion presented a number of arguments relevant to the § 3553(a) analysis, and the government's response focused on the seriousness of the offense conduct, *see* 18 U.S.C. § 3553(a)(1) and (2)(A), the history and characteristics of Desoto, *id.* § 3553(a)(1), and public-safety considerations, *see Williams*, 557 F.3d at 1256.  Moreover, the same judge who

10

originally sentenced Desoto denied his § 3582(c)(2) motion and so would have been familiar with the details of the case, the relevant § 3553(a) factors, and the bases for the original sentencing decisions. *See United States v. Eggersdorf*, 126 F.3d 1318, 1323 (11th Cir. 1997) (concluding that court adequately considered the § 3553(a) factors in part because "the same district court judge who sentenced Defendant originally was the one who declined to resentence him"). Thus, the record as a whole shows that the court considered the relevant § 3553(a) factors and public-safety considerations before exercising its discretion to deny the sentence reduction.

The district court also provided a sufficient explanation of its reasons for denying the reduction, and the court's explanation is sufficiently compelling to support the discretionary denial of a sentence reduction. As the court noted in its order, and as recounted in more detail above, Desoto had participated in string of violent robberies while serving as a police officer and, during the robberies, he "had no reservations about using violence against his victims or abusing his position of public trust as a police officer." Given the extremely serious and violent nature of Desoto's offense conduct, including his gross abuse of a position of public trust, the district court acted well within its discretion in concluding that a sentence reduction based on Amendment 782 was not warranted. *See* 18 U.S.C. § 3553(a)(1), (2)(A).

11

Because the record as a whole demonstrates that the district court considered the relevant factors, the court did not need to specifically address Desoto's various arguments in favor of a sentence reduction. *See Williams*, 557 F.3d at 1256. Additionally, the court was permitted, but not required, to consider Desoto's post-sentencing conduct. *See id.*; U.S.S.G. § 1B1.10 cmt. n.1(B)(iii).

In sum, Desoto has not shown that the district court abused its discretion by either failing to apply the proper legal standard or failing to follow proper procedures in denying a discretionary sentence reduction. *See Jules*, 595 F.3d at 1241–42. Accordingly, we affirm the denial of Desoto's § 3582(c)(2) motion.

**AFFIRMED.**