[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
August 27, 2002
THOMAS K. KAHN
CLERK

_____

No. 01-15273

_____

D. C. Docket No. 01-00054-CR-PCH

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

DAVID PROUTY,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(August 27, 2002)**

Before DUBINA and BARKETT, Circuit Judges, and HODGES[*], District Judge.

BARKETT, Circuit Judge:

_____

[*]Honorable Wm. Terrell Hodges, U.S. District Judge for the Middle District of Florida, sitting by designation.

David Prouty appeals the sentence imposed for his conviction of conspiracy to use unauthorized access devices and to posses more than fifteen such access devices in violation of 18 U.S.C. § 1029(b)(2), and for unauthorized use of an access device in violation of 18 U.S.C. § 1029(a)(2). He argues, first, that the district court's failure to afford him the right to allocute constitutes plain error where the court sentenced him to the high end of the applicable guideline range. Second, he argues that the district court erred by failing to consider his ability to pay restitution and by delegating the setting of the payment schedule for restitution. We reverse.

## BACKGROUND

Prouty pleaded guilty to two criminal offenses arising out of his unauthorized use of his employer's credit card terminals to obtain restaurant customers' credit card numbers. Prior to sentencing, a presentence investigation report was prepared, to which both Prouty and the government filed objections. Prouty also moved for a downward departure pursuant to USSG § 5K2.0. At the sentencing hearing, the district court ruled on the objections and denied Prouty's request for a downward departure. After the court ruled on the objections, Prouty's adjusted offense level under the sentencing guidelines was 21, which, for the applicable criminal history category 1, has a sentencing range of 37-46 months.

2

The court sentenced Prouty to 46 months' imprisonment. Both parties in this case agree that the court did not comply with Fed. R. Crim. P. Rule 32(c)(3)(C), which requires the court to afford the defendant an opportunity to allocute before sentence is imposed.[1] The parties also agree that Prouty did not timely object to the court's failure to comply with the rule.

In sentencing Prouty, the district court did not impose a fine, because it found that Prouty did not have the financial ability to pay a fine, but also observed that there would be "substantial restitution." The court then ordered Prouty to pay restitution in the amount of $5,386,995.37, "due and payable immediately." Prouty objected on the ground that he did not have the means to pay the restitution immediately, and asked the court to set a reasonable payment schedule. The court denied the request, stating: "I will leave that to the discretion of the Probation Office or whoever does that."

**STANDARD OF REVIEW**

We review the legality of a criminal sentence de novo. United States v. Tamayo, 80 F.3d 1514, 1518 (11th Cir. 1994). However, a district court's failure to afford a defendant the right of allocution will be reviewed only for plain error where the defendant did not timely object. Id. at 1521. A restitution order will be

---

[1]We reject the Government's argument that directing comments to the lawyers suffices to comply with the rule.

3

reviewed <u>de novo</u>.  <u>United States v. Lombardo</u>, 35 F.3d 526, 527 (1994).

## DISCUSSION

**1.    Allocution**

Allocution is the right of the defendant to make a final plea on his own behalf to the sentencer before the imposition of sentence.  It is a right of ancient origin, <u>see</u> <u>United States v. Behrens</u>, 375 U.S. 62, 165 (1963), and "as early as 1689, it was recognized that the court's failure to ask the defendant if he had anything to say before sentence was imposed required reversal."  <u>Green v. United States</u>, 365 U.S. 301, 304 (1961) (Frankfurter, J., plurality opinion).  As Justice Frankfurter explained the importance of the right:  "The most persuasive counsel may not be able to speak for a defendant as the defendant might, with halting eloquence, speak for himself."  <u>Id.</u>  Allocution is thus designed "to temper punishment with mercy in appropriate cases, and to ensure that sentencing reflects individualized circumstances."  <u>United States v. Alba Pagan</u>, 33 F.3d 125, 129 (1st Cir. 1994) (citing <u>United States v. Barnes</u>, 948 F.2d 325, 328 (7th Cir. 1991)).  Moreover, "allocution 'has value in terms of maximizing the perceived equity of the process.'"  <u>Id.</u> (quoting <u>Barnes</u>, 948 F.2d at 328).

The right of allocution is protected in the Federal Rules of Criminal Procedure.  Rule 32(c)(3)(C) provides that the court, prior to imposing sentence,

4

must "address the defendant personally and determine whether the defendant wishes to make a statement and to present any information in mitigation of the sentence."  To find reversible error under the plain error standard, we must conclude that (1) an error occurred, (2) the error was plain, and (3) the error affected substantial rights.  United States v. Olano, 507 U.S. 725, 732 (1993); United States v. Mitchell, 146 F.3d 1338, 1342 (11th Cir. 1998).

We easily conclude that error occurred in this case and that it was plain. Because Rule 32(c)(3)(C) specifically requires the district court to offer the defendant the opportunity to allocute, the court's failure to do so was a "clear" or "obvious" error.  See Olano, 507 U.S. at 734; Mitchell, 146 F.3d at 1342.  Where the first two prongs of the plain error rule are satisfied, the defendant bears the burden of demonstrating that the plain error "affected substantial rights." Olano, 507 U.S. at 734 (quoting Rule 52(a), Fed. R. Crim. P.); Mitchell, 146 F.3d at 1343. In most cases, this means that the "error must have been prejudicial:  It must have affected the outcome of the district court proceedings."  Olano, 507 U.S. at 743. Where all of these elements are demonstrated, we have discretion to order correction of the error and will do so "in those circumstances in which a miscarriage of justice would otherwise result."  See id. at 736; Mitchell, 146 F.3d at 1343.

Prouty's argument that the denial of the right of allocution is reversible error where the defendant was not afforded the opportunity to allocute and the court did not impose the lowest sentence under the guidelines finds support in the decisions of all circuits to have addressed the question. See United States v. Adams, 252 F.3d 276, 287 (3d Cir. 2001); United States v. Riascos-Suarez, 73 F.3d 616, 627 (6th Cir. 1996); United States v. Cole, 27 F.3d 996, 999 (4th Cir. 1994); United States v. Medrano, 5 F.3d 1214, 1219 (9th Cir. 1993); see also United States v. Myers, 150 F.3d 459, 463-65 (5th Cir. 1998) (resentencing always required where defendant's right to allocution is violated); United States v. Walker, 896 F.2d 295, 301 (8th Cir. 1990) (same). These courts have reasoned that, because of the nature of the right and its purpose, prejudice must be found if a defendant has not been given the opportunity to speak to the court when the possibility of a lower sentence existed. Adams, 252 F.3d at 287.

The government suggests that, regardless of the practice in other circuits, Prouty's argument is foreclosed by our own circuit precedent, citing to United States v. Gerrow, 232 F.3d 831, 834 (11th Cir. 2000), and to United States v. Ramsdale, 179 F.3d 1320, 1324 (11th Cir. 1999). We find the government's reliance misplaced. In Ramsdale, we found no manifest injustice in the lack of allocution during the resentencing proceeding because the defendant had been

6

given an opportunity to allocute at his original sentencing hearing, and the remand for resentencing was limited to specific issues. 179 F.3d at 1324. Nothing in Ramsdale governs the outcome of a denial of the right to allocution at an original sentencing hearing. In Gerrow, we noted that the sentencing court had already announced its intention to sentence the defendant at the bottom of the applicable guideline range, and observed that the defendant did not offer anything that "could have resulted in a sentence lower than the lowest end of the guideline range." 232 F.3d at 834 (emphasis added). Gerrow therefore did not indicate what should happen when the defendant receives a sentence that is not at the lowest end of the guideline range.

Similarly, in United States v. Rodriguez-Velasquez, 132 F.3d 698 (11th Cir. 1998), we concluded that there was no "manifest injustice" because the defendant had not objected when he "was given the lowest possible sentence within the Guidelines." 132 F.3d at 700 (emphasis added). See also United States v. Quintana, No. 01-13406, __ F.3d __ (11th Cir. June 20, 2002) (likewise finding no manifest injustice because district court imposed the "lowest term of imprisonment permissible under the guidelines"). Our cases do not address the question of manifest injustice when the defendant did not receive the lowest sentence available within the applicable guideline range, the issue which is squarely presented here

7

and which we now consider.

As the First Circuit has observed, a defendant cannot easily demonstrate prejudice in the context of allocution because "the impact of the omission on a [judge's] discretionary [sentencing] decision is usually enormously difficult to ascertain." Alba Pagan, 33 F.3d at 130. As the Court explained in Green, the right of allocution is premised on the idea that "[t]he most persuasive counsel may not be able to speak for a defendant as the defendant might, with halting eloquence, speak for himself." Green, 365 U.S. at 304. The Adams court elaborated on this point: "Thus, denying [the defendant] his right of allocution was tantamount to denying him his most persuasive and eloquent advocate. And the district court was likewise denied the opportunity to take into consideration [the defendant's] unique perspective on the circumstances relevant to his sentence, delivered by his own voice." Adams, 252 F.3d at 288. Like our sister circuits, we are persuaded that failing to give a defendant the opportunity to speak to the court directly when it might affect his sentence is manifestly unjust. Moreover, the right of allocution is "the type of important safeguard that helps assure the fairness, and hence legitimacy, of the sentencing process." Adams, 252 F.3d at 288 (citing Green, 365 U.S. at 304-05); see also United States v. Myers, 150 F.3d 459, 463-64 (5th Cir. 1998) (observing that the practice of allowing a defendant to speak before

8

sentencing has both functional and symbolic meaning that lends legitimacy to the sentencing process); Alba Pagan, 33 F.3d at 129 (noting that the right of allocution "has value in terms of maximizing the perceived equity of the process").  Because allocution plays a central role in the sentencing process, the denial of this right is "not the sort of 'isolat[ed]' or 'abstract' error that does not impact the 'fairness, integrity or public reputation of judicial proceedings.'" Adams, 252 F.3d at 288 (quoting United States v. Young, 470 U.S. 1, 15-16 (1985)).  Accordingly, we conclude that the district court committed reversible error when it failed to comply with Rule 32(c)(3)(C) and Prouty did not receive the lowest possible sentence within the applicable guideline range.

## 2.    Restitution

Prouty next argues that the district court erred in failing to consider his financial condition when it ordered him to pay restitution immediately, or alternatively, that the district court improperly delegated the setting of the payment schedule to the Probation Office.[2]

The district court ordered Prouty to pay restitution in the amount of $5,386,995.37, "due and payable immediately."  The PSI indicated that Prouty had

[2]The parties agree that the district court did not have discretion as to whether to impose a restitution order, or as to the amount.  See 18 U.S.C. 3663A(a)(1) and (b).  The court's discretion was limited to the timetable for repayment.

only $26 in his savings account, no assets, and $4,712 of debt. After the court

asked if there were any objections to the sentence, the record reveals the following

exchange:

> [DEFENSE COUNSEL]: The only other objection I have to the
> Court's sentence is that Your Honor ordered that restitution be paid
> immediately. Mr. Prouty doesn't have the means to pay a $5 million
> restitution immediately. So we would ask the Court to impose a
> reasonable payment schedule.
>
> THE COURT: I will leave that to the discretion of the Probation
> Office or whoever does that.
> Does that fall within your province?
>
> [PROBATION OFFICER]: When he is released, Your Honor, they do
> work out payment plans with the defendants.
>
> [DEFENSE COUNSEL]: I don't think the statute allows it to be left.
> I think the statute says. [sic]
>
> THE COURT: I will tell you what. He will pay what he could pay.
> That's the reality of it.
>
> [DEFENSE COUNSEL]: That's fair. I just don't want an order
> hanging out there that he is in default of some judgment or some
> order. He will obviously pay what he could pay.

Thus, there is some uncertainty in the record about what the district court intended.

In the government's view, the district court clearly ordered Prouty to pay

restitution immediately and did not delegate authority to the probation office to

establish a payment schedule, but nonetheless recognized that, as a practical

matter, the probation office would arrange for the restitution to be paid over time.

10

Prouty argues that the district court was required to consider his financial circumstances in determining how the restitution would be paid and that the court itself must establish any payment schedule.

The Mandatory Victims Restitution Act ("MVRA") provides: "A restitution order may direct the defendant to make a single, lump-sum payment, partial payments at specified intervals, in-kind payments, or a combination of payments at specified intervals and in-kind payments."  18 U.S.C. § 3664(f)(3)(A).  The MVRA also states that "the court shall, pursuant to section 3572, specify in the restitution order the manner in which, and the schedule according to which, the restitution is to be paid."  18 U.S.C. § 3664(f)(2) (emphasis added).  Section 3572 in turn provides that "[i]f the [restitution] order[] permits other than immediate payment, the length of time over which scheduled payments will be made shall be set by the court . . . ."  18 U.S.C. § 3572(d)(2).[3]

Thus, those of our sister circuits to have considered the question have

_____

[3] In contrast, the predecessor statute to the MVRA, the Victims and Witness Protection Act of 1982, provided that the court could "require that [the] defendant make restitution . . . within a specified period or in specified installments," but did not expressly state that the court must set the terms of repayment in the restitution order.  By contrast, the plain language of the MVRA expressly precludes delegation of repayment scheduling to the probation office by providing that "the length of time over which scheduled payments will be made shall be set by the court . . . ."  18 U.S.C. § 3572(d)(2).  This new language has removed any ambiguity that might have existed in the predecessor statute regarding the permissibility of delegating authority to determine the installment schedule.

11

uniformly held that setting a schedule for a prisoner to pay restitution or fines is a core judicial function under the MVRA, and that the district court may not delegate discretion to set the schedule.  See United States v. McGlothlin, 249 F.3d 783, 784-85 (8th Cir. 2001) (MVRA requires the district court to set a detailed payment schedule at sentencing); United States v. Coates, 178 F.3d 681, 684-85 (3d Cir. 1999) (explaining that Constitution and MVRA forbid district court to delegate authority to set payment schedule);[4] cf. United States v. Hayes, 135 F.3d 133, 139 (2d Cir. 1998) (crediting district court with recognizing, regardless of whether MVRA or predecessor statute governed, that it must itself fix restitution schedule). We agree with this reading of the express language of the statute and hold that the MVRA precludes the district court from delegating duties expressly delineated in the statute.

Moreover, if the statute does not permit delegation to the probation office, we cannot endorse a restitution order requiring "immediate" payment with an informal understanding that the probation office shall set a repayment schedule.

_____

[4]In United States v. Jones, 289 F.3d 1260 (11th Cir. 2002), we declined to follow the reasoning of Coates as to whether the MVRA forbids a district court from relying upon uncontested findings of a Presentence Investigation Report in assessing a defendant's ability to make immediate payment of restitution.  See Jones, 289 F.3d at 1266.  Our decision in Jones did not consider the Coates opinion's analysis of whether the district court may delegate authority to set a payment schedule.

12

Obviously, the availability of such an option would in practice defeat the statutory requirement that the court establish any installment schedule. Accordingly, we conclude that the district court's restitution order was improper.

In light of our conclusion that the district court erred in delegating the repayment schedule to the probation office, we need not reach Prouty's alternative contention that the court's restitution order is infirm in light of a purported failure to consider whether Prouty was capable of paying the full restitution sum immediately.

## CONCLUSION

For the foregoing reasons, we vacate the sentence and remand for resentencing consistent with this opinion.

**VACATED AND REMANDED.**

HODGES, District Judge, concurring:

I concur in Judge Barkett's opinion for the court, but write separately to make two brief observations.

First, the sentencing hearing was a lengthy one, extending into the evening after the taking of evidence and the argument of counsel on several points, and it is absolutely clear that the bypassing of the defendant's personal allocution was an inadvertent oversight by all of the participants including the lawyers for both sides. In fact, the judge specifically inquired of counsel whether anything else needed to be done and he received a negative response.

Second, I would emphasize that United States vs. Jones, 289 F.3d 1260 (11th Cir. 2002), is distinguishable because there the sentencing judge clearly intended that the order of restitution be due immediately, and that was found to be justified by the defendant's financial ability to pay as disclosed in the presentence report. There was no need for a payment schedule. Here, by contrast, although the judge initially declared that the order of restitution should be due and payable immediately, his subsequent remarks effectively recognized that the defendant's apparent financial distress necessitated a payment schedule, a task he then delegated to the probation officer. It was the latter step that the statute forecloses; and, to my mind, that prohibition is entirely illogical when one considers that in many cases – where the

14

defendant has no presently discernable assets and a lengthy term of commitment is imposed – there will be little or no factual basis upon which to fashion a reasoned payment schedule of any kind. To delegate oversight of the payment protocol to the probation officer, amenable to adjustment over time and subject always to judicial approval, would make perfect good sense. I acknowledge, however, that the statutory scheme also supplies one apparent solution to this problem by (a) providing in 18 USC §3664(f)(3)(B) that the court may direct "nominal periodic payments;" and by (b) providing in 18 USC §3664(k) that the court may "adjust the payment schedule, or require immediate payment in full, as the interests of justice require" upon learning from the victim or the United States that there has been "a material change in the defendant's economic circumstances." Thus, in a case like this one, the sentencing court could elect to impose nominal payments during the period of incarceration and thereafter until such time as the court is notified by the victim or the United States that there has been a material change in the defendant's ability to pay.