[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
September 26, 2006
THOMAS K. KAHN
CLERK

No. 06-11953
Non-Argument Calendar
_____

D. C. Docket No. 04-00368-CV-OC-10-GRJ

RODNEY H. WILLIAMS,

Petitioner-Appellant,

versus

BRUCE PEARSON, Warden,

Respondent-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

**(September 26, 2006)**

Before CARNES, PRYOR and FAY, Circuit Judges.

PER CURIAM:

Rodney H. Williams, a federal prisoner, appeals pro se the dismissal of his

petition for writ of habeas corpus, 28 U.S.C. § 2241, on grounds that the district

court erred by finding that he failed to raise a constitutionally cognizable claim. Williams filed his instant petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-32, 110 Stat. 1214 (1996); therefore, the provisions of that act govern his appeal. For the reasons set forth more fully below, we affirm.

Williams, a federal prisoner who was convicted and sentenced to 86 months' imprisonment in the Eastern District of Virginia for 12 counts of wire fraud, 2 counts of identity theft, and one count of false use of a social security number, filed the instant pro se § 2241 petition. In his petition, Williams claimed that the Bureau of Prisons (BOP) was illegally collecting money from him and had illegally established a payment schedule in violation of United States v. Prouty, 303 F.3d 1249 (11th Cir. 2002). In support, Williams filed a memorandum in which he argued that, as part of his sentence, the district court had ordered him to pay a special assessment of $1500 and restitution under the Mandatory Victims Restitution Act (MVRA) in the amount of $186,942.58. He stated that the court's order required him to pay no less than $200 per month beginning 60 days after he was placed on supervised release.

Williams argued that the BOP was illegally collecting his money because (1) he had not been released from prison, and (2) the BOP had set its own schedule,

both of which were in violation of the district court's payment schedule. Subsequently, Williams filed a motion for a temporary restraining order and preliminary injunction to prevent the BOP from collecting his money during the pendency of his § 2241 proceedings. Williams argued that he had been "coerced" into participation in the BOP's "Inmate Financial Responsibility Program" (IFRP) and requested that the BOP be enjoined from using it.

In support, Williams filed an affidavit in which he stated that the BOP falsely claimed that participation in the IFRP was voluntary. He further argued that the BOP was taking 50% of his wages every month and he lived under the threat of "FRP Refusal Status" if he stopped participating. Williams claimed that the BOP had never been designated as a "collection agency" and was arbitrarily waiving certain inmates' orders of restitution. Williams further claimed that, if he chose not to participate in the IFRP, he would suffer consequences, including a heightened custody level and lesser pay status. He argued that such consequences for choosing not to participate in the IFRP violated the Fifth, Eighth, and Fourteenth Amendments of the Constitution because they constituted additional punishment not imposed by the district court. Lastly, Williams provided examples of how the rigid application of IFRP Program Statement 5380.07 caused arbitrary results to different inmates that had the ultimate effect of changing an inmate's

3

status to "FRP Refusal Status" and subjecting him to a higher security level and other consequences. Ultimately, Williams's core objection was that the application of 5380.07 was arbitrary and it was "nearly impossible for an inmate to consistently comply with the program . . . because the payment schedule is set without any regard to any unforeseen illness or catastrophic event which regularly occur in the prison environment."

The BOP responded, inter alia, that the IFRP was a voluntary program that provided certain incentives and benefits for participation and that inmates who chose not to participate or failed to comply with the financial plan agreed upon as part of the IFRP were not extended the same benefits. Thus, the BOP argued that Williams had correctly stated that his failure to participate would result in the loss of some of the benefits he currently enjoyed, but his claim simply did not rise to the level of a Fifth Amendment constitutional claim and should be denied. The district court denied the preliminary injunction after finding that Williams had neither complied with the local rules nor shown a substantial likelihood of success.

In response to Williams's original complaint, the BOP submitted exhibits, including a copy of a contract Williams signed, in which he agreed to participate in the IFRP and have 50% of his payments from work deducted to satisfy his financial obligations. Williams responded, in part, that the BOP's reliance on

4

regulations was irrelevant because he was sentenced under the MVRA, which overrode all regulations preceding its enactment. He further argued that there was no evidence that the court wanted him to participate in the IFRP and reiterated his assertion that he only was required to pay $200 per month starting 60 days after his release from prison.

The BOP later submitted pages six and seven of the district court's judgment against Williams, showing the monetary penalties and schedule of payments. The district court ordered that payments would be applied first to the assessment and then to the restitution. The court then ordered as follows:

> The special assessment is due in full immediately. If not made immediately, the court authorizes the deduction of appropriate sums from the defendant's account while in confinement in accordance with the applicable rules and regulations of the Bureau of Prisons. . . . Any balance that remains unpaid on the special assessment and restitution at the inception of supervision shall be paid by the defendant in installments of not less than $200.00 per month, until paid in full. Said payments shall commence sixty (60) days after release on supervision.

The following page stated that "[r]estitution is due and payable immediately."

In response, Williams argued for the first time that the BOP's regulations and the MVRA were unconstitutional on their face because they imposed an enhancement of punishment in violation of his Sixth Amendment rights in light of Blakely v. Washington, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004).

5

Prior to the court's decision, the BOP filed a notice of supplemental authority directing the court to an unpublished opinion by this Court holding that a district court does have jurisdiction under § 2241 to consider challenges to BOP regulations, but affirming the court's denial of the petitioner's claim because the IFRP program was voluntary and the benefits were not constitutionally guaranteed. See United States v. Warmus, 151 Fed.Appx. 783 (11th Cir. 2005) (unpublished).

The district court subsequently denied Williams's petition, citing to Warmus and finding that the IFRP was a voluntary program, and, therefore, the BOP's implementation of it was not a cognizable claim under § 2241, and Williams appealed.

On appeal, Williams states that his § 2241 claim was that the BOP arbitrarily and capriciously coerces inmates to participate in the IFRP under threat of Special Housing Unit placement and a transfer to a higher security facility. He proceeds, however, to state that he is attacking the execution of his sentence and wishes to enforce his actual sentence, which he argues requires a payment schedule of $200 per month 60 days after his release. Williams then argues that the district court did not properly review his petition and that his claim should have been decided under Prouty because the issue raised is identical. He further argues that the Fourth Circuit, where he was sentenced, has similarly held that a district court cannot

delegate the final authority to establish the scheduling of restitution payments. Williams argues that Warmus is inapposite because it concerned only a special assessment, not restitution ordered under the MVRA, and Prouty is the case most closely on point. Williams also argues, for the first time on appeal, that the district court's order should be vacated under Fed.R.Civ.P. 60(b) because it was fraudulently issued.[1]

We review de novo a district court's denial of habeas relief under § 2241. Skinner v. Wiley, 355 F.3d 1293, 1294 (2004). While 28 U.S.C. § 2255 provides the primary post-conviction relief for federal prisoners, it is possible for a federal prisoner to attack his conviction and sentence through § 2241 as opposed to § 2255. Moreover, the Supreme Court has permitted federal prisoners to use § 2241 to challenge BOP regulations categorically excluding a class of prisoners from early release. See Lopez v. Davis, 531 U.S. 230, 236, 121 S.Ct. 714, 720, 148

---

[1] This argument was raised for the first time on appeal, and, therefore, we decline to address it. Access Now, Inc. v. Southwest Airlines Co., 385 F.3d 1324, 1331 (11th Cir. 2004). Additionally, Williams has not offered any argument regarding his Eighth Amendment claim, either to the district court or in his initial brief, and we will not consider it here. Id. at 1330-31. Moreover, Williams raised for the first time in his reply brief an argument that his sentence was unconstitutionally vague and an argument that the district court violated its Article III duties. Arguments raised for the first time in a reply brief will also not be considered. Bauknight v. Monroe County, Fla., 446 F.3d 1327, 1330 n.2 (11th Cir. 2006). Lastly, we note that Williams has made a passing argument that the court's restitution order violated his Sixth Amendment rights in light of United States v. Booker, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005). This argument is meritless, as we have held that nothing in Booker applies to the MVRA or restitution orders. United States v. Williams, 445 F.3d 1302, 1310-11 (11th Cir. 2006).

7

L.Ed.2d 635 (2001). In an non-binding, unpublished case, we, citing Lopez, approved of § 2241 as a vehicle for challenging BOP regulations. Warmus, 151 Fed.Appx. at 786. Thus, to the extent Williams's claim is a challenge to the regulations themselves and the manner in which his sentence is being executed, § 2241 was the proper statute for bringing suit.

First, to the extent Williams is arguing that the IFRP violates his due process rights, we conclude the argument is meritless. The IFRP was created to encourage "each sentenced inmate to meet his or her legitimate financial obligations." 28 C.F.R. § 545.10. The regulations provide that, when an inmate has a financial obligation, including the special assessment and restitution imposed at sentencing, BOP staff "shall help that inmate develop a financial plan and shall monitor the inmate's progress in meeting that obligation." 28 C.F.R. § 545.11. The IFRP, however, is a voluntary program with consequences if an inmate chooses not to participate in it, 28 C.F.R. § 545.11(d), and while this Circuit has not yet done so, every circuit to have addressed the IFRP has approved of it and found no due process violations. See Montano-Figueroa v. Crabtree, 162 F.3d 548, 549 (9th Cir. 1998) (collecting cases). The Second Circuit, in a 42 U.S.C. § 1983 case, has further held that a prisoner's "compelled participation [in the IFRP] is not punitive because . . . it [is] 'reasonably related to a legitimate governmental objective' of

8

rehabilitation," and, therefore, not a violation of due process.  Johnpoll v.

Thornburgh, 898 F.2d 849, 851 (2d Cir. 1990).  We agree.

Second, if Williams is arguing that the district court improperly delegated

authority to the BOP, that is a challenge to the judgment and sentence as a whole,

and the proper vehicle for challenging it is a motion to vacate pursuant to 28

U.S.C. § 2255, not § 2241.  Cf Matheny v. Morrison, 307 F.3d 709, 711 (8th Cir.

2002) (persuasively holding that a prisoner's claim that the district court

unconstitutionally delegated its powers when imposing sentence was an attack on

the validity of the sentence and should be brought under § 2255, not § 2241).

Next, Williams also argues that the BOP is not executing his sentence in

conformity with the district court's order, resulting in wages being taken from him.

The Supreme Court has stated that, unless a habeas "claim alleges a lack of

jurisdiction or constitutional error, the scope of collateral attack [is] . . . limited,"

and "an error of law does not provide a basis for collateral attack unless the

claimed error constituted 'a fundamental defect which inherently results in a

complete miscarriage of justice.'" United States v. Addonizio, 442 U.S. 178, 185,

99 S.Ct. 2235, 2240, 60 L.Ed.2d 805 (1979).  The same is true for errors of fact.

Id. at 186, 99 S.Ct. at 2241.  While Addonizio concerned a § 2255 challenge to a

conviction, the Court has further stated that discretion is implicit in the statutory

9

command that courts "dispose of the matter as law and justice require." Stone v. Powell, 428 U.S. 465, 478 n.11, 96 S.Ct. 3037, 3044 n.11, 49 L.Ed.2d 1067. As Williams's challenge to the execution of his sentence under § 2241 is a non-constitutional challenge, we conclude that he is required to make a strong showing that the manner in which his sentence is being executed is resulting in a miscarriage of justice.

Here, we doubt that the BOP is executing Williams's sentence inappropriately. The court's sentence directed Williams to immediately pay the special assessment and authorized the BOP to deduct appropriate sums from Williams's account while in confinement in accordance with the applicable BOP rules and regulations. It further ordered that, if there was any remaining unpaid balance on both the special assessment and restitution at the time of Williams's release, then Williams would have to pay a minimum of $200 per month beginning 60 days after the inception of his supervised release. The following page indicates that "[r]estitution is due and payable immediately." To that end, Williams signed a contract with the BOP to have 50% of his wages earned in prison applied to his two financial obligations—the assessment and restitution. Given the foregoing, and the fact that restitution was ordered due immediately, we do not think that the BOP is improperly executing Williams's sentence in any way. Williams agreed to

10

the program, and contrary to his opinion, the district court's schedule was not simply $200 per month only after he was placed on supervised release. Instead, the district court ordered immediate payment, with any remaining unpaid balance after Williams's release to be paid off at $200 per month.

The case that Williams believes supports his claim that the BOP is improperly using the IFRP to execute his sentence, specifically the restitution order, is United States v. Prouty, 303 F.3d 1249 (11th Cir. 2002). In Prouty, we interpreted the MVRA, which provides, in part, that "a restitution order may direct the defendant to make a single, lump-sum payment, partial payments at specified intervals, in-kind payments, or a combination of payments at specified intervals and in-kind payments." 18 U.S.C. § 3664(f)(3)(A). The MVRA also states that "the court shall, pursuant to section 3572, specify in the restitution order the manner in which, and the schedule according to which, the restitution is to be paid." 18 U.S.C. § 3664(f)(2). Section 3572 in turn provides that "[i]f the [restitution] order[ ] permits other than immediate payment, the length of time over which scheduled payments will be made shall be set by the court . . . ." 18 U.S.C. § 3572(d)(2). Based on that language, we held that "the MVRA precludes the district court from delegating duties expressly delineated in the statute," such as the duty to create a schedule for paying restitution. Prouty, 303 F.3d at 1255. The

11

district court in Prouty ordered immediate repayment with an "informal understanding" that the probation office would set the schedule, and we held that the court's order did not comply with the MVRA's requirements that the court set the schedule. Id.

However, as Prouty points out, the MVRA provides that "[i]f the [restitution] order[ ] permits other than immediate payment, the length of time over which scheduled payments will be made shall be set by the court . . . ." 18 U.S.C. § 3572(d)(2). Therefore, if the restitution order does not permit other than immediate payment, the district court is not required to set the schedule. In Prouty, the intent of the district court was somewhat unclear, and it immediately delegated the repayment schedule to the probation office. Prouty, 303 F.3d at 1254. Here, the court clearly ordered the restitution to be due in full immediately, and, therefore, under the MVRA, was not required to schedule the payments.

Even assuming the court had not contemplated deducting funds for the purposes of paying of restitution, Prouty would not be applicable to the instant case. Prouty was a direct appeal in which the defendant clearly was challenging the district court's order of restitution as being in violation of the MVRA. From the record in this case, Williams has never directly appealed the court's actual restitution order. If he believed that the district court violated the MVRA by

failing to set a schedule, his first remedy should have been to file a direct appeal, and his failure to raise the issue on direct appeal renders the claim procedurally defaulted. Dohrmann v. United States, 442 F.3d 1279, 1280-81 (11th Cir. 2006) (holding that a prisoner procedurally defaulted on his § 2241 challenge to the district court's initial calculation of restitution).

Williams's real claim, however, is that the BOP is improperly executing the district court's order. Since there is no constitutional violation in the BOP's actions, and clearly Williams cannot challenge the district court's entire judgment in this § 2241 motion, the issue is whether or not the BOP's actions constitute a miscarriage of justice. Williams is required to pay restitution as part of his judgment, and the BOP's actions in deducting sums of money to put toward Williams's financial obligation simply do not result in any miscarriage of justice. If Williams truly believes that prison officials are violating his constitutional rights through their actions, he may file a lawsuit against them seeking damages under Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). See Behrens v. Regier, 422 F.3d 1255, 1263 n.15 (11th Cir. 2005).

We, therefore, conclude that the district court's order dismissing Williams's

§ 2241 is due to be affirmed because Williams has not stated a cognizable claim.

**AFFIRMED.**