[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-14753
Non-Argument Calendar
_____

D.C. Docket No. 1:17-cr-20130-RNS-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JUAN CARLOS ARVIZU HERNANDEZ,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(July 17, 2019)

Before WILLIAM PRYOR, GRANT and HULL, Circuit Judges.

PER CURIAM:

After a jury trial, Juan Carlos Arvizu Hernandez appeals his 360-month sentence imposed on his convictions for conspiring to distribute cocaine knowing that it would be unlawfully imported into the United States, in violation of 21 U.S.C. § 959(a)(2) and 21 U.S.C. § 963.  Hernandez was arrested in, and then extradited from, Honduras for trial in the United States.  On appeal, Hernandez contends that his 360-month sentence violated the extradition treaty between the United States and Honduras and the conditions of the extradition order.  After review, we affirm.

## I.  BACKGROUND FACTS

### A.    Offense Conduct

Hernandez, a Honduran citizen, was a leader of a large-scale narcotics transportation organization operating in Honduras.  Hernandez's organization was part of a larger distribution chain that moved narcotics north through Central America to Mexico and then into the United States.  As part of this distribution chain, Hernandez and his workers were responsible for receiving large (multi-hundred kilogram) shipments of cocaine from Colombia, Venezuela, and Brazil and temporarily storing them in Honduras until they could be shipped to the next destination in the chain, often a point close to the Guatemalan border or in Belize or Mexico.

In this role, Hernandez and his workers, bearing guns, received the shipments by aircraft at clandestine airstrips and then moved the drugs further north by go-fast boats. Some, if not all, of these shipments were destined for the United States.

## B.    Extradition and First Indictment

Hernandez was originally indicted in June 2015. The grand jury's two-count indictment charged Hernandez and a co-defendant with: (1) one count of conspiring to distribute a Schedule II controlled substance, namely five kilograms or more of cocaine, knowing that such controlled substance would be unlawfully imported into the United States, in violation of 21 U.S.C. §§ 959(a)(2) and 960(b)(1)(B); and (2) one count of knowingly and intentionally manufacturing and distributing a Schedule II controlled substance, namely five kilograms or more of cocaine, knowing that such substance would be unlawfully imported into the United States, in violation of 21 U.S.C. § 959(a)(2) and 18 U.S.C. § 2.

A warrant was issued for Hernandez's arrest. After placing Hernandez on fugitive status, the United States sought assistance from the Honduran government to effect his arrest. In June 2016, Hernandez was extradited from Honduras to the United States pursuant to a treaty between the two nations.

The treaty provided that each nation would "deliver up to justice any person who may be charged with or may have been convicted of [crimes against the laws

3

for the suppression of the traffic in narcotic products] within the jurisdiction of one of the Contracting Parties while said person was actually within such jurisdiction when the crime was committed." Notably, the treaty did not limit the type of sentences one country could impose, nor did it provide that one of the countries could condition the surrender of the fugitive based on his possible sentences.

In the government's extradition affidavit to the Honduran government, the government specifically listed the two charges against Hernandez and stated that Hernandez faced life imprisonment if convicted. The government also attached to its affidavit: (1) a copy of the indictment; (2) the relevant U.S. code provisions under which Hernandez was charged; (3) a penalty sheet showing that he faced life in prison; and (4) his arrest warrant.

In its extradition order, the Honduran Supreme Court found that the conduct described in the indictment was also a violation of Honduran law, specifically Articles 15 through 19. The Honduran Supreme Court also provided copies of the relevant provisions of the Honduran code. Under Articles 18 and 19, the manufacture, sale, or trafficking of cocaine, or financing or assisting the manufacture, sale, or trafficking of cocaine is unlawful in Honduras, and the maximum penalty for trafficking or financing or assisting in the trafficking of cocaine was 20 years' imprisonment. Accordingly, the Honduran government found that Hernandez's extradition under the treaty was appropriate, subject to

4

several conditions.  And, those conditions included that Hernandez could not be tried for an offense other than the two charges that resulted in the extradition request and "shall not receive the death penalty or any degrading, inhuman or ignominious penalty."

## C.    Second Indictment and Trial

On January 17, 2017, the district court dismissed the original 2015 indictment without prejudice on Speedy Trial Act grounds.  The government then re-indicted Hernandez on February 21, 2017, charging him with the same two drug counts.  Specifically, Hernandez was charged with Count 1, conspiring to distribute a Schedule II controlled substance (five or more kilograms of cocaine) knowing that such controlled substance would be unlawfully imported into the United States, in violation of 21 U.S.C. §§ 959(a)(2), 960(b)(1)(B), and 963; and Count 2, knowingly and intentionally manufacturing and distributing a Schedule II controlled substance (five or more kilograms of cocaine) knowing that such substance would be unlawfully imported into the United States in violation of 21 U.S.C. §§ 959(a)(2), 960(b)(1)(B), and 18 U.S.C. § 2.  The two counts in this indictment were substantively identical to the two counts in the prior indictment, except that Hernandez was not charged with his former co-defendant.

Prior to trial, Hernandez moved to dismiss the new indictment for violation of the extradition treaty with Honduras.  Hernandez argued that the renewed

5

charges violated the treaty because: (1) the government was pursuing a different prosecution; (2) the charges being pursued were not considered criminal by the Honduran government for various reasons; and (3) the dramatic differences between the maximum penalties for the charged offenses under Honduran law (twenty years) and U.S. law (life) meant that he would be subjected to "potentially degrading, inhuman, or ignominious punishment" for the charged offenses.  The district court denied Hernandez's motion to dismiss.

Hernandez proceeded to trial,[1] where the government's evidence implicated him in the scheme described above.  After the district court dismissed Count 2 at the government's request, the jury found Hernandez guilty of the cocaine importation conspiracy charged in Count 1.

## D.    Sentencing

At sentencing, the district court calculated a total offense level of 43 and a criminal history category of I, which yielded an advisory guidelines sentence of life imprisonment.  Hernandez argued that he was innocent and requested a sentence below the guidelines sentence and specifically requested a sentence of no more than five years.  In a sentencing memorandum, Hernandez argued, among other things, that the district court should consider that the government had

---

[1]On the first day of trial, the district court granted Hernandez's motion to proceed pro se and ordered Hernandez's appointed counsel to act as standby counsel.  At sentencing, Hernandez continued to represent himself, with standby counsel present at the hearing.

prosecuted him in violation of the extradition treaty because his first indictment was dismissed. Hernandez also incorrectly stated that the charge he was "previously indicted on which was used to secure his extradition held a maximum statutory sentence of 0-10 years," which he contended was "in stark contrast to the life sentence [he] is currently facing." In fact, under both indictments, Hernandez was charged with the same offenses and faced the same possibility of a life sentence. Notably, Hernandez never argued that a life sentence would violate the extradition treaty or the Honduran government's extradition order.

The district court agreed to vary downward and imposed a 360-month sentence, the minimum sentence requested by the government. In choosing the sentence, the district court stressed that Hernandez's conspiracy was "a very serious offense involving a huge amount of cocaine," that Hernandez "had a major role in the drug conspiracy," and that he had shown no remorse.

After the district court imposed the sentence, the district court asked if Hernandez had any objections to the sentence and advised him that he should renew all of his previous objections to protect his rights. Hernandez responded, "Yes, your honor. However, I find this is total injustice, Your Honor. But now I have to appeal just as the truth is, right? I am being adjudged through lies, but what can you do? Innocence is worth nothing. Corruption is the one that has value." Once again, Hernandez did not raise any objection to his sentence based

on the extradition treaty, the extradition order, or Honduran law, or argue that the district court could not impose a sentence in excess of twenty years.

## II.  DISCUSSION

On appeal, Hernandez, represented by counsel, raises only one argument as to his sentence.[2]  Specifically, Hernandez contends that, when read together, the extradition treaty, the analogous Honduran drug law setting a maximum 20-year punishment, and the Honduran government's extradition order, which conditioned his extradition on not being subject to a "degrading, inhuman or ignominious" sentence, precluded the district court from imposing a 360-month (30-year) sentence.

Whether Hernandez's sentence is illegal under the extradition treaty and extradition order is a question of law we ordinarily would review de novo.  See United States v. Prouty, 303 F.3d 1249, 1251 (11th Cir. 2002) ("We review the legality of a criminal sentence de novo."); see also United States v. Puentes, 50 F.3d 1567, 1575 (11th Cir. 1995) (stating that the review of an extradition order presents a legal question concerning the interpretation of a treaty and is subject to plenary review).  However, where the defendant failed to raise the error at

---

[2]Hernandez does not challenge the district court's denial of his motion to dismiss his indictment or raise any other issue as to his jury trial and conviction.  In addition, as to sentencing, Hernandez does not challenge the district court's calculation of the advisory guidelines sentence or argue that his 360-month sentence is procedurally or substantively unreasonable.

sentencing, this Court reviews only for plain error, and the defendant must show there is (1) error, (2) that is plain, and (3) that affects substantial rights. United States v. Rodriguez, 398 F.3d 1291, 1298 (11th Cir. 2005). If these three conditions are met, this Court "may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." Id. (internal quotation marks omitted).

A country is under no legal obligation to surrender a fugitive to another country as a matter of international law. Puentes, 50 F.3d at 1572. To broaden the reach of their criminal justice systems, countries enter into extradition treaties, "which are cooperative agreements between two governments for the prosecution and punishment of criminals." United States v. Valencia-Trujillo, 573 F.3d 1171, 1180 (11th Cir. 2009). Typically, extradition treaties list the offenses for which extradition will be granted, and "[w]hen the surrendering country receives an extradition request, it may decide to grant extradition only for the offenses covered by the treaty and that is where the rule of specialty comes in." Id. Under the rule of specialty, "a nation that receives a criminal defendant pursuant to an extradition treaty may try the defendant only for those offenses for which the other nation granted extradition." Puentes, 50 F.3d at 1572. A criminal defendant has standing to allege a violation of the rule of specialty but may raise "only those objections that the rendering country might have brought." Id. The Supreme Court also has stated

9

that "absent a clear and express statement to the contrary, the procedural rules of the forum State govern the implementation of the treaty in that State." Medellin v. Texas, 552 U.S. 491, 517, 128 S. Ct. 1346, 1363 (2008) (internal quotation marks omitted).

The extradition treaty between the United States and Honduras, and its subsequent amendment, provides that each sovereign will extradite an individual charged with a crime against the laws for the suppression of the traffic in narcotic products within one of the two countries, "provided that such surrender shall take place only upon such evidence of criminality as, according to the laws of the place where the fugitive or person so charged shall be found, would justify his apprehension and commitment for trial if the crime or offense had been there committed." Convention between the United States and Honduras for the Extradition of Fugitives From Justice, U.S.-Hond., art. I & II, July 10, 1912, 37 Stat. 1616; Supplementary Extradition Convention between the United States and Honduras, U.S.-Hond., art. I, June 7, 1928, 45 Stat. 2489 (adding "Crimes against the laws for the suppression of the traffic in narcotic products" to the list of extraditable offenses). The treaty provides that "[n]o person shall be tried for any crime or offense other than that for which he was surrendered." Convention between the United States and Honduras for the Extradition of Fugitives From Justice, U.S.-Hond., art. IV, July 10, 1912, 37 Stat. 1616. The treaty and its subsequent

10

amendment do not limit the length of a sentence that the receiving country may impose on an extradited person, do not give the two countries the ability to otherwise condition an extradition by limiting the sentence the requesting country may impose, and do not provide which country's procedural rules shall apply. See id.; Supplementary Extradition Convention between the United States and Honduras, U.S.-Hond., June 7, 1928, 45 Stat. 2489.

Here, Hernandez's sentencing challenge fails for two reasons. First, although not addressed by the parties or the district court, it appears Hernandez does not have standing to argue that his 360-month sentence is in violation of the treaty because the treaty does not address a country's ability to limit the length of an extradited person's sentence as a condition of extradition. See Medellin, 552 U.S. at 505-06 & n.3, 128 S. Ct. at 1357 & n.3 (stating that self-executing provisions of a treaty will have the force and effect of a legislative enactment but that international agreements, even those directly benefiting private persons, generally do not create private rights or provide for a private cause of action in domestic courts); see also Puentes, 50 F.3d at 1572 (stating that a defendant's standing to challenge a treaty is limited "to only those objections that the rendering country might have brought"). However, even assuming Hernandez has standing to assert this particular violation of the treaty, his challenge fails on the merits.

11

As a threshold matter, because Hernandez never objected to his 360-month sentence on the ground that it violated the extradition treaty or the extradition order, our review is for plain error.  Hernandez's pretrial motion to dismiss his second indictment does not entitle him to preserved error review of his sentence.  That motion argued several reasons why the government's prosecution on the second indictment violated the extradition treaty, but none of those reasons included the specific argument—the twenty-year sentence limit—now being made for the first time on appeal.

In any event, on this record, Hernandez cannot show error, much less plain error.  Nothing in the record supports Hernandez's claim that Honduras sought, and the United States "tacitly agreed," to condition Hernandez's extradition on his receiving a prison sentence of no more than twenty years' imprisonment, as Hernandez contends.  The Honduran extradition order provided only that Hernandez not be sentenced to death or to any penalty that was "degrading, inhuman or ignominious."  The extradition order did not refer to maximum prison terms at all.  The only mention of a maximum 20-year sentence is found in Articles 18 and 19 of Honduran law.  The extradition order cited Articles 18 and 19 but only in determining whether Hernandez's U.S. charges would have been crimes if committed in Honduras, which, unlike the ability to place sentencing limitations on the requesting nation, is an actual requirement and provision of the extradition

12

treaty.  Additionally, the United States' extradition request specifically informed the Honduran government that Hernandez faced a life sentence if convicted, and despite this, the Honduran government agreed to extradite him.  To the extent Hernandez claims his 360-month sentence constitutes a "degrading, inhuman, or ignominious penalty," we disagree based on the totality of the record in this case.  Accordingly, the district court's 360-month sentence does not violate either the extradition treaty or the extradition order.

**AFFIRMED.**