[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 19-14803
Non-Argument Calendar
_____

D.C. Docket No. 3:19-cr-00069-RV-1


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

DEMETRIUS L. SPRINGS,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Florida
_____

(November 18, 2020)

Before GRANT, LAGOA, and LUCK, Circuit Judges.


PER CURIAM:

Defendant Demetrius Springs pleaded guilty to one count of perjury.  In the plea agreement, he also agreed to pay a $100 special assessment on or before the date of sentencing; he agreed that if he could not pay at that time he would participate in the Inmate Financial Responsibility Program.  He now argues for the first time on appeal that he was denied the right to allocution, and that the district court improperly delegated its judicial function in permitting his $100 special assessment to be discharged via the IFRP.  Because the district court did not commit plain error, we affirm.

I.

According to Springs, the crimes at issue here started as an attempt to preserve evidence.  At all times relevant to this appeal, Springs had been housed by the Florida Department of Corrections, and apparently by 2014 he had undergone mistreatment at the hands of the prison officials.  So in February 2014, he filed for an emergency injunction.  Per prison policy, camera footage is overwritten after 30 days, so it is understandable that Springs wanted to get the court's attention.

Less understandable is how he went about doing so.  In response to Springs's filing, a magistrate judge held a two-day hearing in June 2014 to determine whether Springs was under imminent danger of serious physical injury.  It was in that hearing where Springs testified to shocking instances of abuse.  He claimed that he was gassed, beaten, sprayed with chemicals, shot with a "beanbag-type device," palm punched, and body slammed.  He also claimed to have had his hand shut in a door flap.  The magistrate judge, however, found that this testimony

2

was "belied by other evidence of record, and likely crafted by the defendant for the purpose of furthering this litigation."

Springs's testimony gave rise to an indictment for eight counts of perjury in the United States District Court for the Northern District of Florida. The indictment was returned on June 18, 2019. At first, Springs was represented by attorney Ronald Johnson, but then Springs requested that he be allowed to represent himself. The court granted his request.

A little more than two weeks later, Springs entered into a plea agreement with the government. In the agreement, he pleaded guilty to only one of the eight counts of perjury—the count in which Springs claimed to have been shot with a "beanbag-type device." The agreement provided that Springs "agrees to pay the special monetary assessment on or before the date of sentencing." Further, the agreement stated that if "the Defendant is unable to pay the special assessment prior to sentencing due to indigence, the Defendant agrees to participate in the Inmate Financial Responsibility Program." The Inmate Financial Responsibility Program refers to a program in which the Bureau of Prisons staff assists "the inmate in developing a financial plan" to meet "his or her legitimate financial obligations." 28 C.F.R. § 545.10.

At the change of plea hearing, the district court reappointed the same counsel upon Springs's request, and accepted Springs's guilty plea. The district court also acknowledged that portion of the plea agreement which mentioned the Inmate Financial Responsibility Program, and Springs affirmed that he understood that provision.

The sentencing hearing was in November 2019.  After a brief discussion about the Presentence Report, the district court asked, "Mr. Springs, would you like to speak personally?"  Mr. Springs responded by apologizing to the court, by explaining his perjured testimony as stemming from an attempt "to get some help from ongoing mistreatment" at the prison, and by requesting to be placed in the REAP program, a program that would help him become reintegrated into society following his long incarceration.

At that point, counsel began to talk more about Springs's specific circumstances and the benefits the REAP program could provide.  Next up was the Government, which noted the absence of violence and serious infractions from Springs's record, but still asked for a "reasonable sentence that's not greater than necessary for both specific and general deterrence."

That was when counsel prompted Springs to talk about the specific purpose for his perjury—the preservation of camera footage.  Springs asked, "Well—may I speak, Judge?"  The court allowed him to speak, but went on to say that "we're not here to go into a whole series of complaints, but go ahead."  After Springs clarified that he "just wanted to ask" the court's "permission to speak," he went on to explain how, because of the 30-day policy on recording over camera footage, "there was nothing" he "could do but continue to come to the court asking for help."

The district court then handed down a prison term of 27 months, noting that it was "at the bottom of the guideline range."  The prison term was to be followed by three years of supervised release.  Noting that Springs did "not have the

4

financial ability to pay a fine," the district court waived it.  But the district court also declared that "as the law requires, a monetary assessment of $100 must be and is ordered, which is due and payable immediately."

The hearing concluded without any objections from Springs or his counsel. But that did not end this matter, because Springs now brings two issues for the first time on appeal.  He argues that the district court denied his right to allocution when it stated that it was "not here to go into a whole series of complaints."  He also argues that the plea agreement, insofar as it incorporates the IFRP, constitutes an improper delegation to the Bureau of Prisons of the district court's authority to schedule the payments of fines and monetary penalties.

II.

"When a party does not object to an issue at sentencing, we review only for plain error."  *United States v. Cingari*, 952 F.3d 1301, 1305 (11th Cir. 2020). Because Springs did not raise either issue before the district court, we review the district court's alleged failure to allow allocution and imposition of a fine for plain error.[1]  *Id.*; *United States v. Doyle*, 857 F.3d 1115, 1118 (11th Cir. 2017).  To find plain error, Springs must show that "(1) there is an error; (2) that is plain or obvious; (3) affecting his substantial rights in that it was prejudicial and not

---

[1] Springs claims that he was ignored when he tried to object at the sentencing hearing.  But the only time that claim appears is in Springs's reply brief, and the sentencing transcript provides no indication that Springs attempted to object.  We require that parties "submit all issues on appeal in their initial briefs."  *May v. Morgan Cnty. Georgia*, 878 F.3d 1001, 1006 n.5 (11th Cir. 2017) (quotation marks omitted).  And in any event, "[s]tatements by counsel in briefs are not evidence."  *Travaglio v. Am. Express Co.*, 735 F.3d 1266, 1270 (11th Cir. 2013) (quotation marks omitted).

harmless; and (4) that seriously affects the fairness, integrity, or public reputation of the judicial proceedings." *Cingari*, 952 F.3d at 1305 (quotation marks omitted).

## III.

### A.

The right to allocution, as codified in the Federal Rules of Criminal Procedure, requires that the sentencing court "address the defendant personally in order to permit the defendant to speak or present any information to mitigate the sentence." Fed. R. Crim. Proc. 32(i)(4)(A)(ii). But we do not require "a specific script"; rather, we ask "whether the district court's colloquy with the defendant is the 'functional equivalent' of what Rule 32(i)(4)(A)(ii) prescribes." *United States v. Perez*, 661 F.3d 568, 584–85 (11th Cir. 2011) (quoting *United States v. De Alba Pagan*, 33 F.3d 125, 129 (1st Cir. 1994)). And to show functional equivalency, "the record must demonstrate that the court, the prosecutor, and the defendant must at the very least have interacted in a manner that shows clearly and convincingly that the defendant *knew* he had a right to speak on any subject of his choosing prior to the imposition of sentence." *Id.* at 585 (punctuation altered) (emphasis in original) (internal quotation marks omitted).

At the hearing, the district court began by telling Springs that "before I impose sentence this afternoon, I think you know you'll have an opportunity to speak, both personally and through your attorney, about anything at all that you believing I should know." Shortly thereafter, the court asked Springs if he "would . . . like to speak" personally. Springs took the court up on the offer, and after a conversation regarding a letter Springs sent to the court, he told the court, "As far

6

as with reference to a punishment or punitive, I respect your wisdom." He requested to be placed in the REAP program, and ended by saying that "if you have any anything aside from that, Judge, that you would like for me to answer, inquiries, I'm going to do my best to shoot straight with you and give you the truth."

That is how he ceded the floor, and that is why his argument that the court's statement that "we're not here to go into a whole series of complaints" was a denial of the right to allocution fails. Before the district court even made that statement, Springs was told in no uncertain terms that he should *know* he had a right to speak personally with regard to his sentence. He exercised that option, and ceased speaking of his own accord. All of this was before the district court made the statement that Springs objects so strenuously to. The right to allocution does not confer the right to allocute *twice*.

Springs argues that the court's statement that he should not go into "a whole series of complaints" intimidated him, and dissuaded him from sharing with the court information that would have lessened his sentence. But Springs fails to point us to any binding caselaw which suggests that would be enough to constitute a denial of the right to allocution. In *United States v. Prouty*, the district court failed to afford Prouty an opportunity to allocute, and could not comply with Rule 32 by "directing comments to the lawyers." 303 F.3d 1249, 1251, 1251 n.1 (11th Cir. 2002). In other cases, we found plain error where the court failed to personally address the defendant in the allocution context. *see Doyle*, 857 F.3d at 1118 (11th Cir. 2017); *United States v. Carruth*, 528 F.3d 845 (11th Cir. 2008). That is a far

7

cry from Springs's argued subjective intimidation, especially since it was not apparent in the sentencing hearing transcript.

Springs was personally addressed, and invited to exercise his right of allocution. The only alleged wrongs occurred well after he of his own volition ceased to speak. The district court did not commit error, let alone plain error.

B.

Springs also argues before us (but not before the district court) that the district court improperly delegated its judicial function to the Bureau of Prisons with regard to the special assessment. As he sees it, the part of the plea agreement where he agreed to participate in the IFRP gives the Bureau of Prisons an authority to schedule his payments that it simply cannot exercise. But Springs must show plain error to receive his requested relief, and the only binding case he cites to is *United States v. Prouty*. 303 F.3d 1249.

And for Springs's case, *Prouty* is not all that it seems. In *Prouty*, we interpreted 18 U.S.C. § 3572(d)(2), which provides that if the order "permits other than immediate payment, the length of time over which scheduled payments will be made shall be set by the court." 303 F.3d at 1254. In that case, the district court had ordered restitution "due and payable immediately," but then told the defense counsel that a payment schedule would be left "to the discretion of the Probation Office or whoever does that." *Id.* at 1253–54. We held that "we cannot endorse a restitution order requiring 'immediate' payment with an informal understanding that the probation office shall set a repayment schedule." *Id.* at 1255.

8

The most important difference between the case before us and *Prouty*, though, is this:  The sentence in *Prouty* was reviewed de novo, while the standard of review here is plain error.  "It is the law of this circuit that, at least where the explicit language of a statute or rule does not specifically resolve an issue, there can be no plain error where there is no precedent from the Supreme Court or this Court directly resolving it."  *United States v. Lejarde-Rada*, 319 F.3d 1288, 1291 (11th Cir. 2003).  And unlike in *Prouty*, the involvement of the Bureau of Prisons and the IFRP came from the plea agreement that Springs entered into with the government.  We have no case law establishing that including the IFRP in a plea agreement is improper, which means that Springs cannot establish plain error.[2]

## IV.

The arguments Springs raised were raised for the first time before this Court. Showing plain error is difficult, and Springs has failed to do so.  Springs's sentence is **AFFIRMED**.

---

[2] We do not read Springs's briefs as challenging the Bureau of Prison's regulations themselves. If Springs wants to bring such a challenge, he may do so via a 28 U.S.C. § 2241 petition. *See Lopez v. Davis*, 531 U.S. 230, 236 (2001).

9