[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 09-15692
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 25, 2012
JOHN LEY
CLERK

D. C. Docket No. 03-20949-CR-JLK

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

GUSTAVO BRU,
a.k.a. Julio,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(July 25, 2012)

Before CARNES, HULL and WILSON, Circuit Judges.

PER CURIAM:

After pleading guilty, Gustavo Bru appeals his 121-month sentence for

conspiring to possess with intent to distribute five kilograms or more of a substance containing a detectable amount of cocaine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(ii) and 846. After review, we affirm.

## I.  BACKGROUND

Although defendant Bru's offense conduct was in 2003, Bru was a fugitive for years. As a result, Bru had several revised Presentence Investigation Reports ("PSI") and several different attorneys. We detail the sequence of events that led to his 2009 sentencing.

### A.  Offense Conduct in 2003

In 2003, Drug Enforcement Administration ("DEA") agents investigated a Colombian narcotics trafficking group that was based in Panama. As a result of the investigation, the DEA seized a shipment of approximately 121 kilograms of cocaine as it arrived in Port Everglades, Florida, on November 7, 2003. The trafficking group had arranged for the cocaine shipment to be distributed among three or four different groups of buyers, with the sales to be facilitated by several DEA confidential sources ("CS").

Defendant Bru and his co-defendant William Acevedo Sterling formed one of the groups of buyers. Law enforcement agents monitored and recorded the negotiations that took place between a CS and the Bru/Sterling group.

2

On November 18, 2003, a CS told DEA agents that one of the Colombian traffickers told him to distribute 35 kilograms of the cocaine to "Julio" in Miami, and said that Julio would call the CS to arrange a meeting. Shortly thereafter, a man who identified himself as Julio called the CS. Julio said he would send someone to meet the CS to pick up the cocaine. Later, the CS received a call from co-defendant Sterling, who identified himself as "a friend of Julio's." Sterling and the CS set up a time and place to do the pick-up.

The CS arrived at the pre-arranged location with a bag containing 35 kilograms of "sham" cocaine. The CS called Julio and said he was waiting for Julio's friend to arrive. A short time later, defendant Bru arrived and approached the CS's car. DEA agents watched defendant Bru enter the car from the passenger side, talk to the CS, leave with the bag of sham cocaine, and ride away in a white Ford Expedition that was rented in defendant Bru's name and was being driven by co-defendant Sterling. DEA agents stopped the Expedition and arrested Bru and Sterling. The CS told DEA agents that Bru had told the CS, during their conversation in the car, that he was Julio.

## B. Bru's Guilty Plea in 2003

On December 2, 2003, defendant Bru was indicted on two counts: conspiring (Count 1) and attempting (Count 2) to possess with intent to distribute

five kilograms or more of a substance containing a detectable amount of cocaine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(ii) and 846. Bru pled not guilty and was released pending trial on a $100,000 bond. Later, Bru pled guilty to Count 1 and the government agreed to dismiss Count 2. The district court accepted Bru's plea, adjudicated him guilty, and continued his bond until sentencing.

## C. Bru is Fugitive in 2004–2008

Defendant Bru failed to appear for his sentencing hearing scheduled for April 28, 2004. The district court re-set the hearing for May 10, 2004, but Bru again failed to appear. The district court revoked Bru's bond, declared Bru a fugitive, and issued a bench warrant for his arrest.

Defendant Bru fled to Colombia and evaded authorities for years. In 2008, Colombian police arrested Bru and imprisoned him pending extradition to the United States. Bru spent 13 months in a Colombian prison before his June 2009 extradition. Bru retained new counsel for his sentencing in 2009.

## D. 2009 Sentencing

The Presentence Investigation Report ("PSI") was originally prepared in March 2004 and was revised in April 2004, July 2009, and August 2009. The PSI noted that: (1) defendants Bru and Sterling "are viewed as equally culpable" in the offense because "[t]hey negotiated with the CS for the purchase of [the] 35

4

kilograms of cocaine and collaborated equally to complete the transaction"; and (2) "Bru contacted the CS on the telephone several times to negotiate the purchase of the cocaine."

The PSI calculated: (1) a base offense level of 34 pursuant to U.S.S.G. § 2D1.1(a)(3), (c)(3) (2003); and (2) a two-level increase for obstruction of justice, pursuant to U.S.S.G. § 3C1.1, because of defendant Bru's flight. The PSI declined to apply a reduction for acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1. Bru had no criminal history points. With an adjusted offense level of 36 and a criminal history category of I, Bru's advisory guidelines range, as calculated by the PSI, was 188 to 235 months' imprisonment.

Defendant Bru raised objections to the PSI both in 2004 and in 2009. In 2004, through his original counsel, Bru objected to the PSI's suggestion that he was the "Julio" who called the CS to negotiate and arrange the details of the drug pick-up. Bru admitted that, in the CS's car, the CS asked him if he were Julio and Bru said yes. But Bru claimed that he "answered this question affirmatively because he was instructed by the organizers that 'Julio' was the name they had assigned to identify the courier in the transaction," and that he did not know the organizers used the name "Julio" to identify the man who made the phone calls arranging the transaction.

Defendant Bru also objected to the PSI's determination that he was equally culpable with Sterling and argued he was entitled to a minor or minimal role reduction pursuant to U.S.S.G. § 3B1.2(a)–(b). Bru claimed his role was merely to pick up the drugs from the CS "and deliver[] them a few feet away" to Sterling, who was waiting in the Expedition. Bru also argued that he was entitled to a reduction for acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1.[1]

In 2009, through his new sentencing counsel, defendant Bru objected to the revised PSI. Bru objected to the lack of a three-level reduction for acceptance of responsibility, arguing that his failure to appear for sentencing "should not mitigate his initial and now subsequent acceptance of responsibility for both the underlying offense and the failure to appear."[2] Bru also objected to the lack of safety-valve relief pursuant to U.S.S.G. § 5C1.2.[3] Bru conceded the applicability of the

---

[1]In April 2004, the PSI was revised to apply a three-level reduction for acceptance of responsibility because Bru had admitted his involvement in the offense and timely notified the government of his intent to plead guilty. Later revisions to the PSI, following Bru's flight and return to custody, removed this reduction.

[2]Bru submitted a written statement, included in the PSI, in which he apologized for his flight while awaiting sentencing. Bru claimed he fled to Colombia primarily to be with his mother, who was suffering from serious heart problems, "on her death bed."

[3]The safety-valve relief of § 5C1.2, which is authorized by 18 U.S.C. § 3553(f), provides that the 10-year mandatory minimum under 21 U.S.C. § 841(b)(1)(A)(ii) does not apply to defendants who meet certain criteria, including having no more than one criminal history point, not being a leader or organizer in the offense, and not using violence or a dangerous weapon in connection with the offense. See 18 U.S.C. § 3553(f), U.S.S.G. § 5C1.2(a). The original PSI stated that Bru was entitled to safety-valve relief. The 2009 version of the PSI stated that, according to the prosecutor currently assigned to the case, Bru was not entitled to receive the

6

obstruction-of-justice increase and did not object to the lack of a minor-role reduction.

The district court held a sentencing hearing on August 28, 2009. At the hearing, the government conceded that the safety-valve provision applied.[4] The parties also agreed that Bru was entitled to credit for the approximately 13 months he served in Colombia awaiting extradition. According to the government, the only issue was whether Bru was entitled to a reduction for acceptance of responsibility in light of his flight. Bru's counsel did not contradict or correct the government on its statement that the acceptance-of-responsibility reduction was the only issue in dispute.

The district court held that Bru was entitled to a two-level reduction for acceptance of responsibility. Thus, with an adjusted offense level of 32 and a criminal history category of I, Bru's advisory guidelines range was 121–151 months' imprisonment. The district court determined that a low-guidelines sentence was appropriate and sentenced Bru to 121 months' imprisonment.

The district court addressed Bru personally when it pronounced sentence, and advised Bru of his right to appeal. The court did not ask Bru if he wished to

---

benefit of the safety-valve provision.

[4]As a result, Bru's offense level was subject to a two-level reduction pursuant to U.S.S.G. § 2D1.1(b)(16).

speak on his own behalf or ask if he had reviewed the PSI or consulted with counsel about it. The district court did ask, however, if the defense "has any objection to the sentence, or the manner [in] which it was pronounced," and Bru's counsel responded that "we do not." Bru later appealed the sentence and retained new appellate counsel.[5]

## II. DISCUSSION

Bru raises three issues on appeal: (1) whether the district court erred by failing to indicate on the judgment that Bru was entitled to credit for the 13 months he served in prison in Columbia while awaiting extradition; (2) whether the district court violated the procedural requirements of Federal Rule of Criminal Procedure 32 during the sentencing hearing; and (3) whether Bru's 2009 counsel provided ineffective assistance at the sentencing hearing.

We need not address the first claim. In his reply brief, Bru acknowledges this issue has been resolved, as Bru has now obtained (with the assistance of the United States Attorney's Office) credit from the Bureau of Prisons for his Colombian imprisonment time.

---

[5]Bru filed his notice of appeal untimely, but within 30 days of the appeal period's expiration. On September 21, 2010, this Court remanded the case for the district court to determine whether Bru's untimely notice of appeal was the result of excusable neglect or good cause under Federal Rule of Appellate Procedure 4(b)(4). After an evidentiary hearing, the district court found Bru's untimely filing was the result of excusable neglect.

Nor do we consider Bru's third claim. "We will not generally consider claims of ineffective assistance of counsel raised on direct appeal where the district court did not entertain the claim nor develop a factual record." United States v. Patterson, 595 F.3d 1324, 1328 (11th Cir. 2010) (quoting United States v. Bender, 290 F.3d 1279, 1284 (11th Cir. 2002)). Here, the district court did not entertain an ineffective assistance claim, and there has been no factual development of the claim whatsoever. Therefore, we decline to consider it on direct appeal.

That leaves only Bru's Rule 32 claim. Bru argues that the district court violated Rule 32 by not: (1) ruling on Bru's 2004 objections to the PSI's factual statements that Bru was Julio and negotiated with the CS before the drug pick-up; (2) ruling on Bru's 2004 objection to the lack of a minor role reduction; (3) verifying that Bru had read the PSI and discussed it with his counsel; and (4) addressing Bru personally and giving him the opportunity to speak or present information in mitigation of sentence.

Bru did not make these arguments to the district court. Instead, when asked if the defense had any objections to the sentence or the manner in which the district court pronounced it, Bru's counsel said he and Bru had none. Because these arguments are raised for the first time on appeal, we review only for plain error. See, e.g., United States v. Dorman, 488 F.3d 936, 942 (11th Cir. 2007) (applying

9

plain error review to alleged Rule 32 violation raised for first time on appeal).[6]

"To find reversible error under the plain error standard, we must conclude that: (1) an error occurred, (2) the error was plain, (3) the error affected substantial rights in that it was prejudicial and not harmless, and (4) the error seriously affected the fairness, integrity, or public reputation of a judicial proceeding." United States v. Perez, 661 F.3d 568, 583 (11th Cir. 2011), cert. denied, 132 S. Ct. 1943 (2012). "Where the district court . . . offered the defendant the opportunity to object to his sentences, this court will not entertain an unraised objection unless refusal to do so would result in manifest injustice." Id. (quotation marks omitted).

At sentencing, Rule 32 requires a district court to, inter alia: (1) "verify that the defendant and the defendant's attorney have read and discussed the [PSI] and any addendum to" the PSI, Fed. R. Crim. P. 32(i)(1)(A); (2) "address the defendant personally in order to permit the defendant to speak or present any information to mitigate the sentence," Fed. R. Crim. P. 32(i)(4)(A)(ii); and (3) rule on any disputed portion of the PSI "or determine that a ruling is unnecessary either because the matter will not affect sentencing, or because the court will not consider

---

[6]We reject the government's contention that Bru intentionally waived—rather than forfeited by failing to raise—his 2004 PSI objections, and thus is not entitled even to plain error review. "Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the 'intentional relinquishment or abandonment of a known right.'" United States v. Olano, 507 U.S. 725, 733, 113 S. Ct. 1770, 1777 (1993). There is no evidence in the record from which to infer Bru or his counsel intentionally chose to abandon or relinquish the 2004 objections.

10

the matter in sentencing," Fed. R. Crim. P. 32(i)(3)(B).

The parties do not dispute, and we agree, that the district court committed error that was plain when it did not follow Rule 32's requirements of (1) verifying that Bru had read the PSI and discussed it with his attorney, and (2) addressing Bru personally to permit him to speak or present information in mitigation of his sentence. Fed. R. Crim. P. 32(i)(1)(A), (i)(4)(A)(ii). However, we conclude that the district court did not commit error that was plain as to Bru's 2004 objections (to certain facts in the PSI and the lack of a minor role reduction) because they: (1) were raised by Bru's previous counsel, not his 2009 sentencing counsel; (2) were not renewed in the objections to the PSI as later revised; and (3) were not raised, or even mentioned, at the sentencing hearing.

But even if Bru had shown the district court committed plain error as to all of his alleged Rule 32 violations, he has failed to show that the errors affected his substantial rights. The "affected substantial rights" prong of the plain-error test requires the defendant to show "a reasonable probability that the result would have been different but for the error[s]." United States v. Underwood, 446 F.3d 1340, 1343–44 (11th Cir. 2006); see United States v. Fields, 408 F.3d 1356, 1360 (11th Cir. 2005).

Bru has not shown a reasonable probability that he would have received a

lesser sentence if the district court had confirmed he read and discussed the PSI with his attorney, permitted Bru to speak, and ruled on the 2004 objections. First, Bru never contends that he actually failed to read the PSI or discuss it with his counsel, and fails to articulate any possible effect on his sentence caused by the district court's failure to confirm these facts. Second, although we have held that the failure to give a defendant the right to speak in mitigation of sentence affects substantial rights where the defendant "did not receive the lowest possible sentence within the applicable guideline range," United States v. Prouty, 303 F.3d 1249, 1253 (11th Cir. 2002), here Bru did receive the lowest possible sentence—121 months—under the applicable guidelines range.

Further, Bru has not shown that a lower guidelines range would have applied had the district court ruled on the 2004 objections. Even if the district court had sustained Bru's 2004 objections to the fact section of the PSI and accepted his position that he was not the "Julio" who negotiated the cocaine transaction on the phone with the CS, Bru did not dispute that he nevertheless acted as a drug courier by personally meeting with the CS, retrieving 35 kilograms of cocaine from the CS's vehicle, and renting the car with which he and Sterling left the drug pick-up. In order to obtain a minor role reduction, Bru would have had to prove by a preponderance of the evidence that he had a minor role in the transaction. United

States v. Barner, 572 F.3d 1239, 1253 (11th Cir. 2009). In light of the very substantial quantity of drugs involved, and Bru's admitted conduct during the drug transaction, it is not reasonably probable that the district court would have granted Bru's request (had he made one at the 2009 sentencing hearing) for a minor role reduction as to the 35 kilograms of cocaine for which Bru was convicted. See United States v. Rodriguez De Varon, 175 F.3d 930, 943 (11th Cir. 1999) (stating that, for drug couriers, the amount of drugs involved is a material consideration in deciding whether minor-role reduction is warranted, and courier's possession of very large quantity of drugs "may be the best indication of the magnitude of the courier's participation in the criminal enterprise"). Bru has not met his burden of showing that the district court's errors affected his substantial rights, and thus he is not entitled to relief on his claims of Rule 32 error.

**AFFIRMED.**